Raymond Deleon **MARTINEZ**, Appellant,

*v.*

The **STATE** of Texas, Appellee.

No. 69303.

Court of Criminal Appeals of Texas, En Banc.

Sept. 21, 1988.
Rehearing Denied Jan. 11, 1989.

Jimmy James, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., William J. Delmore, III, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CLINTON, Judge.

Appellant was convicted of the offense of capital murder under V.T.C.A. Penal Code, § 19.03(a)(2). The jury answered all three special issues in the affirmative. Accordingly, the trial court assessed punishment at death. Appellant's conviction was automatically appealed to this Court. Article 37.071, V.A.C.C.P. Sufficiency of the evidence is not disputed.

In his first point of error appellant maintains his challenges for cause against four veniremen were erroneously denied. Each of these veniremen at some point in his voir dire indicated that upon finding appellant guilty of "intentional" murder, § 19.03(a)(2), supra, he would "automatically" respond affirmatively to special issue one, inquiring whether "the conduct of the defendant that caused the death of the deceased was committed deliberately and

with the reasonable expectation that ... death ... would result." Article 37.-071(b)(1), supra. We have held that such a position manifests an inability, once the issue of guilt has been resolved against an accused, to reconsider guilt evidence for whatever probative value it will have in the particular context of the first punishment issue, thus exposing the venireman to challenge for cause by either party for harboring a bias against the law. Article 35.16, §§ (b)(3) and (c)(2), V.A.C.C.P. *Gardner v. State*, 730 S.W.2d 675, 680, (Tex.Cr.App. 1987).

At the time he exercised his fifteenth and last peremptory challenge, Article 35.15(a), V.A.C.C.P., appellant requested additional peremptory challenges, expressly complaining of the failure of the trial court to grant his challenges against each of the veniremen he now assails. The trial court granted him one. This he used on the next venireman, after which the trial court expressly denied him any more additional peremptory challenges. Subsequently, the very next venireman became the twelfth juror in the case, over appellant's assertion that this venireman was objectionable and he would have exercised a peremptory challenge upon him.[1] If we determine that two or more of appellant's challenges should indeed have been granted, harm would be shown in that appellant was denied the use of at least one of his allotted peremptory challenges. *Bell v. State*, 724 S.W.2d 780, 795 (Tex.Cr.App.1986); *Hernandez v. State*, 563 S.W.2d 947, 948 (Tex.Cr.App. 1978); *Wolfe v. State*, 147 Tex.Cr.R. 62, 178 S.W.2d 274 (1944).[2]

---

**1.** In fact, appellant challenged this venireman, Calvin Griffith, for cause, *inter alia*, on the same basis he challenged the four he now complains of on appeal. Griffith ultimately became the foreman of the jury.

**2.** The recent decision in *Ross v. Oklahoma*, — U.S. —, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), does not affect Texas law in any respect. In *Ross* the trial court erroneously denied the accused's challenge for cause and he was forced to use a peremptory challenge upon that venireman. He subsequently exhausted his remaining peremptories. The Supreme Court held, *inter alia*, that no due process violation occurred because it found that under Oklahoma law one of the express purposes of peremptory challenges

is to ensure veniremen do not sit on the jury who should have been excused for cause but, through error of the trial court, were not. The cases invoked by the Supreme Court for this proposition of Oklahoma law rely upon *Johnson v. State*, 1 Okl.Cr. 321, 97 P. 1059 (1908), which in turn finds its rule in an early Texas decision, *Hudson v. State*, 28 Tex.App. 323, 13 S.W. 388 (1890). *Hudson*, however, was expressly overruled on rehearing in *Wolfe v. State*, supra. After *Wolfe*, it can no longer be said that one purpose of peremptory challenges under Texas law is to correct errors of the trial court in failing to grant valid challenges for cause. Cf. *Kerley v. State*, 89 Tex.Cr.R. 199, 230 S.W. 163 (1921); *Goode v. State*, 740 S.W.2d 453, 458–59 (Tex.Cr.App.1987).

On direct voir dire the prosecutor guided venireman Raymond Segura through the special issues, emphasizing that none of the three questions should "automatically" be answered affirmatively merely upon a verdict of guilty of an "intentional" capital murder. Beginning with the first special issue, she posed a hypothetical designed to illustrate how a defendant could be guilty of an "intentional" murder in the course of a robbery, under the law of parties, on facts that might not support a finding that his particular conduct was "committed deliberately."[3] She then continued:

"Q. ... So the law is saying look at the conduct of each of the individual people and see did their conduct cause the death of the deceased and was it committed deliberately with the reasonable expectation that somebody would die.

So could you see that you answer Issue One yes or no on the evidence?

A. Yes.

Q. And what's real important is that you realize that you never automatically answer Issue One yes because you found the Defendant guilty of capital murder?

A. Right, yes, okay.

Q. True, when you find somebody guilty of capital murder, it's an intentional killing; but that never means that you answer Issue One yes.

A. I understand.

Q. Okay.

Again, I hate to belabor the point, but I think it's real critical. The words sound so terrible, gosh, you found somebody guilty of an intentional killing, you didn't find that their conduct caused the death of the deceased. You say no, the 17 year-old was just a lookout inside the bank, and he was scared stiff to be there. He doesn't know those two ex-cons planned to kill the teller. And that's why it's real important as to Issue One that you always look at the conduct of the individuals, that you base your answer on the evidence and never say, well, knee-jerk reaction, intentional killing, guilty of capital murder, Issue One, yes. Okay?

A. Okay."

After briefly discussing special issues two and three, the prosecutor revisited issue one, suggesting a distinction between "deliberate" and "intentional," thus:

"Q. I want to talk a little bit about this word, deliberately, and what it means. The word deliberately does not mean premedidated [sic] or preplanned. Webster's defines it as willfully or purposefully.

You can go in and plan to rob a U–Totem. You didn't plan it before you went to kill the man. You didn't deliberately intend to kill the man. During the course of the robbery, he may have come in, and that customer knows you, and in a second the Defendant shoots because he knows the man can recognize him, and he kills the customer.

Can you see that his crime was not premeditated or preplanned, but his act in killing the customer was willful and purposeful?

A. Yes.

Q. Now, the law again, and this question with deliberately is trying to go to the different states of mind of Defendant's. You may have a Defendant that goes in with a gun and fires the gun in the air to scare everyone, to get them on the ground so they won't see. And the bullet hits a beam and strikes the teller or the clerk, and the teller dies. Capital murder, intentionally during the course of the robbery. He intended to pull the trigger, intended for the gun to be fired, intended for the gun to go off; but was that act deliberate? Did he willfully or purposefully want the death of the clerk? You see the distinction?

A. Yes, I see the distinction.

Q. And the state of minds we are talking about?

A. Yes.

Q. So you're going to have situations were [sic] there was an intentional killing, intentionally pulling the gun and pulling the trigger, but it will not be a deliberate act?

**3.** See note 5, *post.*

A. Yes.

Q. Okay.

That's real important because you're going to find the Defendant guilty of an intentional killing by finding him guilty of capital murder, because all capital murders are intentional killing; but obviously, not all intentional killings are deliberate, okay?

A. Okay.

Q. So again, you're going to have to look to the facts and circumstances surrounding the situation to decide and answer Issue One. And could you do that if selected as a juror?

A. Yes."

For reasons we have explicated elsewhere, this "shooting into the ceiling" hypothetical does not illustrate the difference between intentional and deliberate. *Gardner v. State*, supra at 686–87; *Lane v. State*, 743 S.W.2d 617, 627 (Tex.Cr.App.1987); *Morrow v. State*, 753 S.W.2d 372, 375, n. 3 (1988).

On cross voir dire the appellant also broached the subject of special issue one, as follows:

"Q. Now, the first question, I think you would agree with me, talks about you found the Defendant guilty of the intentional murder of another human being committed during the course of a robbery, okay? Whatever the facts were, you have determined that he intentionally murdered another human being during the course of a robbery, all right?

A. Yes.

Q. Now, that issue has passed. I think you would agree with me that the first issue that he do so deliberately knowing that the deceased was going to die is talking about the evidence that you heard during the trial, right?

A. Right.

Q. In other words, what was his state of mind, based upon what you determined was the person's state of mind on two things as far as I know, what they say and what they do.

Got any argument with that?

A. No.

Q. All right.

They are talking about using the word deliberately there and the law. The Judge will define to you what intentionally means as far as having found him guilty of the intentional murder during the course of a robbery. To you, is there any difference between intentionally and deliberately doing something? Are the words synonymous with you? Or how do you feel?

The law doesn't define deliberately, and you have a right to believe whatever you think deliberately is. It's one of the terms that the Legislature hasn't defined in addition to some of th [sic] other terms they use in those questions, but we are talking about Question No. 1 only.

A. The difference between intentional and deliberate?

Q. Yes.

A. Intentional, I intended to do it. Deliberate, I did it. There is a little difference.

Q. Okay.

Well, let me ask you this then as far as if you had found a person guilty, whatever the facts may have been used to find him guilty of capital robbery-murder, and you found—obviously you found that the person acted intentionally—intentionally murdered the person during the course of a robbery. If you found that, would you answer that, as far as the first question alone is concerned, would you answer that question yes automatically, or always answer it yes?

A. I wouldn't say always.

Q. Okay.

Under what circumstances would you not, type of circumstances?

A. Well, without a total definition of deliberate, that's a very hard statement to answer.

\* \* \* \* \* \*

Q. And what I am asking is that if you found a person guilty of intentionally murdering another human being in the course of a robbery, found that and believed that beyond a reasonable doubt, then it would be your duty, and you said you would find such a person guilty.

What I am trying to find out now, if you have found a person guilty as stated, would you answer this question yes?

A. Yes.

Q. And would you answer it yes irrespective of whatever the evidence may have been in order to find that person guilty? In other words, having found he intentionally murdered a person in the course of a robbery, you're going to find that it was done deliberately?

A. Yes."

At the conclusion of his voir dire, appellant challenged Segura for cause "on Question One." That the trial court understood precisely the nature of his challenge is apparent from the court's response. Immediately the judge began to query the venireman himself, pointing out that in the court's judgment, "you contradicted yourself. You told [Defense Counsel] that if, as a member of the jury, you had found a person guilty of intentionally committing a murder during the course of a robbery, you would always automatically answer Issue One yes." Segura admitted this was the case, and the following colloquy ensued:

"THE COURT: ... You recall telling [the Prosecutor] on that same issue when she was tying [sic] to explain to you the possibility that there is a difference between intentionally and deliberately, that a person went into a store and robbed it and with no intent to kill anybody, but merely to frighten them to get them to lay down so they wouldn't see the getaway car or something, he fired a bullet into the air?

PROSPECTIVE JUROR: Right.

THE COURT: It hit a beam, ricocheted down and killed the clerk. Now, that's an intentional act, and our law says that you're responsible for your intentional acts. So he intentionally fired the gun, and he intentionally did all of that, but the bullet ricocheted and killed the clerk. And you told [the Prosecutor] hypothetically, under that set of facts, you could consider answering Special Issue One no, whereby you had decided he did not just deliberately shoot the clerk, just pulled out his gun and killed him?

PROSPECTIVE JUROR: Correct.

THE COURT: And you and she agreed on the distinction between intentionally in one case and deliberately in another.

PROSPECTIVE JUROR: Okay. Yes.

\*     \*     \*     \*     \*     \*

THE COURT: Then you told [Defense Counsel] if you had found a person guilty of intentionally committing a murder during the course of a robbery, you would always answer it yes?

PROSPECTIVE JUROR: Well, intentionally in my mind was that if he intended to go in and shoot or murder somebody.

THE COURT: Well, let's go back over it again.

PROSPECTIVE JUROR: Okay.

THE COURT: You intentionally go in to commit a robbery.

PROSPECTIVE JUROR: Okay.

THE COURT: And to get everybody to lay down you intentionally fire your pistol into the air.

PROSPECTIVE JUROR: Okay.

THE COURT: Unfortunately, a bullets [sic] hits a beam, ricochets and kills the clerk.

PROSPECTIVE JUROR: All right.

THE COURT: Our law says if you intentionally commit an act, you're responsible for that conduct. Now, he intentionally committed an act of firing a gun into the air.

PROSPECTIVE JUROR: Yes.

THE COURT: The question is then when you get to Special Issue No. 1, reconciling that he did it deliberately with a reasonable expectation, that the death of the deceased or another would result, could you see that when he fired into the air he did not do it deliberately with a reasonable expectation that the death of the clerk would result?

PROSPECTIVE JUROR: Yes, I can.

THE COURT: Now, do you see the distinction between our law of definition of intentionally doing something as opposed to deliberately doing something?

PROSPECTIVE JUROR: Yes.

THE COURT: All right.

Now, let's go back and just take that hypothetical, and it could be a billion hypotheticals that you would have to consider the evidence of how the robbery-killing went down before you could answer the question depending on what the evidence was.

PROSPECTIVE JUROR: Right, yes, sir.

THE COURT: And are there some hypotheticals you could imagine where you could consider answering no to Special Issue One?

PROSPECTIVE JUROR: Yes.

THE COURT: So you then, you wouldn't always answer Special Issue One yes if you had found somebody guilty of intentionally killing somebody during the course of a robbery?

PROSPECTIVE JUROR: Yes, I would answer no.

THE COURT: [Defense Counsel's] question was if you were on a jury and you found a person guilty of intentionally causing the death of another person during the course of a robbery, would you always answer Special Issue One yes, and you said yes, you would.

PROSPECTIVE JUROR: Well, now maybe I have a better—

THE COURT: Well, that's what we are trying to do.

PROSPECTIVE JUROR: Distinquish [sic] between intentional and deliberate. No, I would not always answer yes.

THE COURT: That's your firm answer on that?

PROSPECTIVE JUROR: Yes, sir.

THE COURT: You would consider the evidence and base your answer upon the evidence?

PROSPECTIVE JUROR: Yes, sir.

THE COURT: All right.

Now, did you have another challenge? That one is overruled."

■ A capital venireman who cannot distinguish between an "intentional" and a "deliberate" killing has demonstrated an impairment in his ability meaningfully to reconsider guilt evidence in the particular context of special issue one. Absent rehabilitation, that venireman should be ex-cused upon challenge for cause. *Gardner v. State*, supra. Clearly the trial court believed that in his responses to defense counsel, Segura manifested such an impairment. In merely reiterating the prosecutor's hypothetical, however, the court failed satisfactorily to rehabilitate him.

Appellant was indicted under the provisions of § 19.03(a)(2), supra, which reads:

"(a) A person commits an offense if he commits murder as defined under Section 19.02(a)(1) of this code and:

\* \* \* \* \* \*

(2) the person intentionally commits the murder in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, or arson ..."

V.T.C.A. Penal Code, § 19.02(a)(1), provides:

"(a) a person commits an offense if he:

(1) intentionally or knowingly causes the death of an individual ..."

In order to be guilty of capital murder under § 19.03(a)(2), then, an accused must have "intentionally ... cause[d] the death" of the deceased. Intentional murder under § 19.02(a)(1), supra, is a "result of conduct" offense; that is, not only must an accused be found to have intended to engage in the act that caused the death, he must also have specifically intended that death result from that conduct. See *Lugo–Lugo v. State*, 650 S.W.2d 72, 88 (Tex.Cr. App.1983) (Clinton, J., concurring). Under V.T.C.A. Penal Code, § 6.03(a), an accused may be said to act "intentionally, or with intent, with respect to ... a result of his conduct when it is his conscious objective or desire to ... cause the result." That a hypothetical accused during the course of a robbery intentionally shot the clerk "in the leg," *Gardner v. State*, supra, intentionally fired a shot into the ceiling, *Lane v. State*, supra, or intentionally pulled the trigger of a firearm, *Morrow v. State*, supra, does not facially establish a "conscious objective or desire" that death should result. In short, the prosecutor's hypothetical in the instant case fails to present an "intentional" murder at all. By its very terms it illustrates a

"conscious objective or desire" only to force the occupants of the store, as the trial court reprised it, to "lay down so they wouldn't see the get-away car or something." Thus, it does not demonstrate an example of a "capital" murder that, while "intentional," was arguably not the product of "conduct ... that ... was committed deliberately and with the reasonable expectation that ... death ... would result." Such a hypothetical "could not logically serve to rehabilitate a venireman who has stated that a guilty verdict on the substantive offense of capital murder would 'automatically' cause [him] to answer special issue one in the affirmative." *Gardner*, supra, at 687. At best it shows a killing that was neither "intentional" nor "committed deliberately...." [4]

Removing the faulty hypothetical from consideration, Segura demonstrated to the

apparent satisfaction of the trial court that his ability to reconsider guilt evidence independently for purposes of resolving special issue one would be impaired. We therefore conclude appellant's challenge for cause as to Segura should have been sustained.

■■■ The voir dire of venireman Janell Hill followed much the same pattern as that of Segura. After first presenting Hill with a hypothetical involving the law of parties intended to show when an accused can be found guilty of an "intentional" killing without himself having acted "deliberately" to bring about that end,[5] the prosecutor continued her questioning as to special issue one in the following vein:

"Q. Okay.

Let's go back to Issue One real quick. The word deliberately will not be defined for you. Webster defines it as willfully or purposefully. And again, merely be-

---

**4.** At worst, "in thus diluting what is required of the State to prove an 'intentional' killing, the hypothetical concomitantly endorses an artificially low threshold of proof to establish the killing was 'committed deliberately....'" *Morrow v. State*, supra, at 376.

**5.** The hypothetical given to Hill involves four men who decide to rob a bank. Two enter the bank with weapons while the other two act as lookout and getaway driver. The hypothetical continues as follows:

"Q. Now, let's look at the get-away driver and look-out. Let's assume they are both 17 and they had talked to the two older men that had the guns and said look, if there's any kind of problems, let's just back out. Let's just leave, don't shoot anybody, don't, you know, let's not take anybody's life, just use the guns to scare somebody. Then you would have to answer Issue One as to the get-away driver and the lookout man.

\* \* \* \* \* \*

So can you consider then as to the get-away driver and the look-out man, considering answering Issue One no, this conduct did not cause the death of the deceased and was not committed deliberately with the reasonable expectation that the death of the deceased or another would result. Could you consider answering no as to them?
A. Yes."

Although not challenged by appellant, we note that this hypothetical also fails to illustrate that "intentional" is not "the linguistic equivalent" of "deliberate." *Heckert v. State*, 612 S.W.2d 549, 552 (Tex.Cr.App.1981). To begin with, the prosecutor's hypothetical assumes, again by its very terms, that the two younger accomplices do *not*

anticipate that an intentional killing will take place. Thus, they could not be found guilty as parties to capital murder in the first place, since they cannot be said to have been "acting with intent to promote or assist the commission of" an intentional murder. V.T.C.A., Penal Code, § 7.02(a). Their vicarious culpability under this provision extends no further than that which they specifically intended to promote in aiding or attempting to aid their confederates—a robbery. That their own conduct may not have been "committed deliberately and with the reasonable expectation that ... death ... would result" is of no moment. They are not guilty of capital murder.

Moreover, assuming the hypothetical had included an intent by the younger accomplices to promote an intentional killing, it still would not illustrate a distinction between the two terms. Under the law of parties under § 7.02(a), supra, a party is held accountable for an offense committed by a primary actor by virtue of his own specific intent to promote commission of that offense. By the same token, as to an accused who is convicted as a party to capital murder, what must be scrutinized for "deliberateness" is not conduct of the primary actor which caused the death, but the conduct of the party by which he solicited, aided, encouraged or directed that killing. *Meanes v. State*, 668 S.W.2d 366, 375–76 (Tex.Cr.App.1983). It occurs to us that what is critical for a venireman to be able to do in order to follow the law in this context is to distinguish between the party's specific "intent *to promote*" the killing, by soliciting, encouraging, etc., and the extent to which he engaged in *that* conduct deliberately...." The prosecutor's hypothetical here in no way served to delineate this distinction.

cause you find a Defendant guilty of an intentional killing, guilty of the crime of capital murder, never means that you automatically find it is a deliberate act. Because the word, the Legislature is using intentionally up here and deliberately down here. So obviously, deliberately means something a little bit different than intentionally.

Let me give you an example. A robber goes into a U-Totem and he takes his gun and he intentionally pulls the trigger, intentionally puts it to the back of the clerk's head and kills the clerk. And it's an intentional act, and it's a willful or purposeful act. He wanted that clerk to die.

You could have another robber that comes in, has the gun, he fires the gun because he wants the clerk on the ground so the clerk won't see the car, and the gun, bullet, he intentionally pulls the trigger, intends to engage in the conduct, the bullet hits the ceiling, ricochets down and kills the clerk. He did not willfully or purposefully want the death of the the the [sic] clerk.

[Defense Counsel]: We object on the suggesting of the definition of the word deliberate. We object on the same grounds we made before as to the law that this is, would not be capital murder, and the other objections we made to same question in the past.

THE COURT: Overruled.

BY [Prosecutor]:

Q. So the law is saying juror, look at the state of minds, there is all kinds of ways you can have an intentional killing.

And can you see such a difference between the man that puts the gun to the back of the head and the man that fires into the air? Can you see the difference in the states of mind?

A. Yes.

Q. That's why it's so important that the juror understands that never because they find a Defendant guilty of an intentional killing means they automatically answer that an intentional killing was deliberate, because there's all kinds of killings.

Can you see what we are talking about?

A. Yes."

Thus, once again the faulty hypothetical was used, over appellant's express objection it "would not be capital murder."

On cross voir dire defense counsel engaged Hill in the following colloquy:

"Q. Now, say that because of your religious beliefs and Bible teachings that you were a strong, well, I don't know if you said in connection with that, but [the Prosecutor] asked you the questions, you considered yourself a strong advocate of the death penalty. Would you tell me why you would consider yourself such a strong advocate of the death penalty?

A. I don't know that I would go out and hold a march or something for it, but I feel like beyond a doubt I believe that it is necessary in some situations.

Q. Okay.

A. I feel like my beliefs are strong. I don't know that I, I don't know that they're strong enough for me to start a campaign on it. Does that make sense?

Q. Well, whether it makes sense or not doesn't make any difference. What I am after is your own personal feelings. I have my own. It's not really a forum for me to express my feelings, but we are interested in just your feelings.

Do you feel such, do you believe that, as a strong advocate of the death penalty, that everyone who is convicted of the intentional taking of another human life in the commission of a robbery, which under the law would make them guilty of capital murder, that all such persons should die or receive the death penalty?

A. If these points can be proved, yes. If they can without doubt. I guess you can't say without, if they are proven guilty—

Q. Would you mind explaining that more?

A. I believe in the death penalty.

Q. Right. We have established that.

A. Okay.

If a person is proved guilty of capital murder, I believe that they should die.

Q. That is, are those your feelings or your beliefs? That is what you're telling me? Or are you asking me the question?

A. No. I thought that answered your question.

Q. Do you feel that,—is that always,—would that always be your opinion in such cases?

A. It's hard to say always. I think, at this point, yes.

\* \* \* \* \* \*

Q. Okay.

You have been given, you have been given several examples here today about death penalty type cases; and what I wanted to find out, because of your strong feelings regarding the death penalty and being an advocate for it as far as you personally are concerned, as I understand it from what you said earlier in response to my questions, is if you find a Defendant guilty of the intentional taking of another human being's life, intentional murder of another human being in the course of committing a robbery offense, that you not only would find, that would you find such a person guilty, and that you would vote yes for the death penalty, or you would vote for the death penalty, whatever was required? Is that correct?

A. Yes. Could I explain something?

Q. Sure.

A. Along those lines, it would be hard to say that, but I feel physical life is short and that person would still have the chance, according to God's word, to save his spiritual life and to still live forever in heaven. For that reason, I may take his physical life, but I could never take his eternal life, which he has a chance to accept or reject.

Do you understand what I am saying?

Q. Well, you understand here, and we are not talking about—

A. Maybe it doesn't matter.

Q. —religious beliefs and moral beliefs and opinions. We are not talking about here, we are not talking about spiritual life, although we are talking about just his physical life.

A. Okay.

Q. Okay. As far as this is concerned.

A. In answer to your question, yes.

Q. And is it true that your feelings, your feelings are very strong as far as this is concerned?

A. Yes.

\* \* \* \* \* \*

Q. Okay.

Certainly, irrespective, you've been asked here many times, you know, you always do this and never do that, and to be qualified or not qualified as a juror you would do that and the other. Well, it may be what the law says, but the law doesn't require of me or doesn't require of you or anybody else to give up or to compromise their own personal beliefs and feelings and opinions in order to conform with the law. Understand that?

A. Yes.

Q. And that's exactly what we are talking about here.

Okay. As I understand you, what you told us here, because of your personal and religious feelings and beliefs, if you find someone guilty of capital murder, you're going to give them the death penalty?

[Prosecutor]: Objection, she never stated that. She said it was based on the evidence.

THE COURT: Overruled. I will let her answer that question.

PROSPECTIVE JUROR: Yes.

[Defense Counsel]: We challenge, Your Honor."

The record reflects that at this point the venireman began to cry.

Observing that Hill had given "some contradictory expressions," the trial court endeavored to "get them resolved for the record." Accordingly, the court again explained that only after the guilt phase of trial, at punishment, would special issues be submitted, and that at that point they must be established beyond a reasonable doubt. As to special issue one, the court continued:

"THE COURT: So [the Prosecutor], to give you an example of where a robber

went in a store, committed a robbery, then to just frighten the clerk, shot up into the air so the clerk wouldn't get the license number and the bullet ricocheted—

PROSPECTIVE JUROR: I see what I have done.

THE COURT: —and killed the clerk. You and she went through that rather deliberately, so speak, and you acknowledged that if that were the facts—

PROSPECTIVE JUROR: I see.

THE COURT: If that were the evidence, even though you convicted that person of capital murder, because he intentionally did the robbery and he intentionally caused the death of the clerk, that you could consider those facts and relate it to Issue One and consider answering no?

PROSPECTIVE JUROR: Right, I see.

THE COURT: Understanding that, if you answer no, then I would mandatorily have to give the life sentence. So death would be out.

PROSPECTIVE JUROR: Because it was not deliberate.

THE COURT: Right.

Because you couldn't say I deliberately did it.

PROSPECTIVE JUROR: Right.

THE COURT: So even though you believe, as you told [Defense Counsel] I believe in death in every capital murder, now you see?

PROSPECTIVE JUROR: I see what I did.

THE COURT: You see yourself coming back around what you really have to do, and I think this is something you and I agreed upon, is I have to wait and hear the evidence, and if I am convinced beyond a reasonable doubt the answer should be yes I will answer it yes; but if I am not convinced beyond a reasonable doubt that it should be answered yes, I will answer it no, even though I know that [the trial court] will have to give him a life sentence.

PROSPECTIVE JUROR: Right.

THE COURT: Would you be willing to do that, fit the facts to the question?

PROSPECTIVE JUROR: Yes.

THE COURT: And you don't go as [the Prosecutor] pointed out, you don't answer those questions on how you want the verdict to come out, you answer them according to the evidence that's applicable to each question.

PROSPECTIVE JUROR: Right.

THE COURT: So are you telling [Defense Counsel] that, because he and his client need to know this?

PROSPECTIVE JUROR: I see.

THE COURT: Would you deliberately, that's deliberately again as a juror, would you deliberately answer Issue One yes against the evidence just to insure that the death penalty was given?

PROSPECTIVE JUROR: No, sir."

Appellant was given an opportunity to question further. After reading the legal definition of "intentional" to Hill, he proceeded:

"Q. In other words, when you get to that point you had found the person on trial intentionally murdered his victim in the course of a committing a robbery, then you've got to answer these questions.

My question to you then, having found someone guilty of that particular offense that you described, could you describe any fact situation where you could imagine you would answer any of those questions no?

A. I think the one given was a very good example.

Q. 17 year-old wheel man that's never been in trouble before, or which one?

A. The one of shooting in the air and it ricochets off the ceiling and kills a man.

Q. Of course, I disagree with the Prosecutor. I'd say that doesn't qualify.

[Prosecutor]: Objection to the personal opinion.

[Defense Counsel]: This doesn't qualify as a capital murder, while intentionally—

[Prosecutor]: Objection to the personal opinion of the Defense Lawyer.

[Defense counsel]: I believe it's while in the course of committing a felony.

THE COURT: Objection sustained. I will instruct the juror on that hypothetical. A capital murder could be alleged and proven."

Appellant next tried to determine whether on the facts of the hypothetical the venireman would in fact find an accused guilty of an intentional murder. The trial court interrupted this line of questioning, however:

"THE COURT: Ms. Hill, would you just listen to the evidence with regard, we give you the hypotheticals. I give you one about shooting into the ceiling. It would be up to you and the fellow jurors to determine whether that was an intentional killing in the course of a robbery. That's one thing. I was giving you that hypothetical. They then go on to the punishment stage and discuss these three questions with you.

A. Right.

Q. So I know you can't tell [Defense Counsel] right now what you would do in a given case.

BY [Defense Counsel]:

Q. Let me ask you this: What is your personal definition of deliberately? In other words, is deliberate for you any different from the legal definition of intentional which I have read to you?

    *    *    *    *    *    *

Certainly, I think an argument can be made that word deliberate, deliberately and intentionally are synonymous and mean the same thing, but it's not what I think or the Judge or [the Prosecutor] thinks. It's what it means to you. Are those terms the same or synonymous to you? Or are they different? And if they are different, how are they different?

A. Intentional with the intent, consciously knowing what you are doing. Deliberately, purposefully. They're very, very close in meaning. I think perhaps it would depend on the situation that I would have to define them in.

Q. Well, I don't know if I understood the last part of your response. We are talking about did you find someone guilty of capital murder, intentionally killing someone during the course of a robbery. Then you would have, at that point, you would have to answer these first two questions.

In other words, what would, would it make any difference to you in that context? Would it be any different in the meanings to you in those two words?

THE COURT: Ms. Hill, let me interject here. The law does not permit me to define the word deliberately for you. It does permit me and it instructs me to define the word intentional to you.

Now, I don't know, the Legislature has wrote up a law on intentionally and defined it and didn't give we judges an opportunity to define deliberately, so I have to take it that at least they differ in the legislators' minds as to the definitions, but I don't know what it is either.

But you see, I would instruct you, a person acts intentionally or with intent with respect to the nature of his conduct or to circumstances surrounding his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. That's like the person pointing the pistol at the ceiling, cocking the gun, possibly pulling the trigger. He intentionally means to do that, and he engages in that conduct. And the law says he is responsible for the end result of it.

So the bullet ricochets and kills the clerk. You understand that as the way intentionally is defined.

But when you get over to Question One, the Legislature saw fit to say, well, did the Defendant do it deliberately. Now, I don't know. Every juror has to put his or her definition to that word?

PROSPECTIVE JUROR: Do you want me to define it in my own words?

[Defense Counsel]: I'd like you to answer my question.

PROSPECTIVE JUROR: He's speaking intentionally on one hand and deliberately on the other?

Deliberately, I think, would be a little bit more purposefully, knowing what the results would be and going ahead and doing that action.

THE COURT: Okay.

[Apparently Defense Counsel:] Ms. Hill, let me ask you this one question, then I will leave you alone on this issue here: If you are sitting in judgment on the jury and you find someone guilty of the capital murder in a situation where the Defendant on trial has intentionally murdered his victim, the deceased, in the course of committing an aggravated robbery where that is what the evidence has shown to you and you found him guilty of that, aren't you going to be more proned [sic] in your consideration in answering these questions, aren't you going to be more proned [sic] to try to answer them yes than you are no, irrespective of what the evidence may be?

[Prosecutor]: Already answered that question. Base it on the evidence, Your Honor.

[Defense Counsel]: Object, she's never been asked. And again object to Prosecutor's intervening and not in purpose of an objection, but stating what the witness has stated. Whether the witness stated it or not, just go along with the Prosecutor's position.

THE COURT: She answered the Court's question in that regard, but for the record I will let her answer your question.

PROSPECTIVE JUROR: No."

Appellant renewed his challenge, which was overruled.

 Here appellant attempted to show, with some success, that Hill would also be impaired in her ability to reconsider evidence adduced at the guilt phase of trial for its probativeness toward special issue one, once a verdict of guilty of intentional murder has been reached. Unlike the case with venireman Segura, however, it is not clear the trial court believed that defense counsel's questioning of Hill unequivocally established she was challengeable for cause absent rehabilitation. Nevertheless the court perceived "some contradiction." In an effort to clear up the matter the trial

court returned to the prosecutor's invalid hypothetical, over repeated objection. In doing so, the trial court effectively produced a venireman with a bias against the law. For as with venireman Sutton in *Lane v. State,* supra, Hill's responses to defense counsel after the trial court's reuse of the hypothetical indicate that whatever may have been her understanding of the difference between "intentional" and "deliberate" before, by the time appellant challenged her she was clearly "relying on a false distinction." *Id.,* at 628. In *Lane* we held it error to force a juror upon the defendant who was exposed to this misconception of the law, the defendant having exhausted a number of his peremptory challenges on veniremen contaminated in like fashion. This can only mean, as we observed in *Morrow v. State,* supra, at 376, that use of the hypothetical actually renders a venireman challengeable for cause. Appellant in the instant cause should not have been required to exercise a peremptory challenge on such a venireman.[6]

■ In failing to grant appellant's challenges for cause against veniremen Segura and Hill, the trial court deprived appellant of the use of a peremptory challenge. This constitutes reversible error. *Wolfe v. State,* supra, and its progeny.

Therefore, the judgment of the trial court is reversed and the cause remanded for new trial.

ONION, P.J., and DAVIS, J., concur in the result.

McCORMICK, J., dissents.

---

6. As we have already noted, at n. 1 *ante,* after exhaustion of his peremptory challenges, appellant was forced to take a venireman, Calvin Griffith, who was also exposed, over objection, to the faulty hypothetical. Thus, as in *Lane,* supra, a contaminated venireman actually sat on appellant's jury. Appellant does not raise failure of the trial court to sustain his challenge for cause against Griffith, however, as a ground for appeal.