**Latonya Denise HARRELL, Appellant**

v.

**The STATE of Texas, Appellee.**

No. 14–94–00180–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

May 2, 1996.

R. Scott Shearer, Houston, for appellant.

Scott A. Durfee, Houston, for appellee.

Before FOWLER, EDELMAN and O'NEILL, JJ.

## OPINION

O'NEILL, Justice.

Appellant, Latonya Denise Harrell, was convicted of murder at a trial before a jury. The trial court assessed punishment at thirty years confinement in the Texas Department of Criminal Justice, Institutional Division. Appellant brings three points of error contending that: (1) the trial court failed to properly instruct the jury; (2) she did not receive effective assistance of counsel; and (3) the judgment is void because the jury consisted of only eleven jurors. We affirm.

### Background

On May 24, 1992, the decedent, Jerry Harrell, departed his apartment at approximately 8:30 a.m. Decedent's wife, the appellant, spent much of that day looking for her husband. She also spent the day drinking and talking with neighbors. When the decedent came home that evening he did not have a key. Appellant let him into the apartment and then returned to her friends. Thereafter the decedent left two more times. Each time he returned, appellant got up to let him into the apartment. About two hours after she last let her husband into the apartment, appellant got up again and went to the apartment.

A neighbor, Mary Davis, testified that she heard a loud noise and saw the decedent rapidly backing out of the apartment door. Davis saw appellant in front of the decedent holding him with her two hands. As the decedent was trying to turn around, appellant shot twice and the decedent fell. Davis testified she did not see the gun, but she did observe a flash in appellant's hands.

Another neighbor, Angela Wilson, testified that on the day of the shooting she was playing cards and drinking with appellant. Appellant told Wilson she was going to kill her husband. Wilson testified that she heard two shots and ran outside. She saw appellant standing over the decedent, and heard her say: "Didn't I say I was going to kill you, motherf____r? I'm from L.A." Wilson testified that appellant then went into Wilson's apartment to use the phone. Appellant called an aunt and told her that she had killed her husband. Appellant then took the decedent's truck and left.

Officer Paul Motard was called to the scene of the homicide, where he observed the body of the deceased and two .380 caliber shell casings nearby. While Officer Motard was conducting his investigation, the appellant returned and signed a consent to search the residence. Motard found a box of .380 caliber shells in appellant's bedroom closet with six shells missing. A .380 caliber semiautomatic pistol was found in appellant's purse. Donald Davis, a firearms examiner, testified that this pistol was the weapon used to fire the bullets found in and around the deceased's body.

Sergeant C.E. Elliott was also dispatched to the scene of the homicide. Elliott interviewed several witnesses and the appellant.

Appellant admitted she had been drinking, and told the officer she shot her husband because they had a fight and he had been grabbing and choking her.

Appellant testified that she and the deceased had a history of domestic violence. She further testified that the gun went off accidentally as she and her husband struggled for control of it, and that the shooting was an accident.

### Point of Error No. 1

In her first point of error, appellant contends the trial court erred in the guilt/innocence phase of trial by giving the jury a charge that failed to limit the definitions of "knowingly" and "intentionally" to the result of appellant's conduct. Appellant claims that murder is a result oriented crime, therefore, the necessary culpable mental state must apply to the result of the conduct and not to the conduct itself. In other words, appellant claims the jury definitions improperly allowed a conviction to be based on a finding that appellant intentionally or knowingly engaged in conduct, use of a gun, which happened to cause the result, the death of her husband.

■ Murder is a result oriented offense. *Cook v. State*, 884 S.W.2d 485, 490 (Tex.Crim. App.1994); *Martinez v. State*, 763 S.W.2d 413, 419 (Tex.Crim.App.1988), *cert. denied*, ―― U.S. ――, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994); *Lugo–Lugo v. State*, 650 S.W.2d 72, 80 (Tex.Crim.App.1983). In a result oriented offense " '[w]hat matters is that the conduct ... is done with the re-

quired culpability to effect the *result* the Legislature has specified.' " *Cook*, 884 S.W.2d at 490. (emphasis in original) (quoting *Alvarado v. State*, 704 S.W.2d 36, 39 (Tex.Crim.App.1985)). Any instructional language relating to conduct is inconsequential. *Id.*

■ In the present case, appellant was charged with intentional murder. The definitional section of the jury charge reads as follows:

A person acts intentionally, or with intent, with respect to *the nature of her conduct* or to a result of her conduct when it is her conscious objective or desire to *engage in the conduct* or cause the result.

A person acts knowingly, or with knowledge, with respect to *the nature of her conduct* or to *circumstances surrounding her conduct* when she is aware of *the nature of her conduct* or that [sic] aware that her conduct is reasonably certain to cause the result.

(Emphasis added).

The Court of Criminal Appeals in *Cook* held that "intentional murder ... is a 'result of conduct' offense, therefore, the trial judge erred in not limiting the culpable mental states to the result of appellant's conduct." *Cook*, 884 S.W.2d at 491. The court went on to state that "it is error for a trial judge to not limit the definitions of the culpable mental states as they relate to the conduct elements involved in the particular offense." *Id.* (citing *McQueen v. State*, 781 S.W.2d 600 (Tex.Crim.App.1989)).[1]

---

1. Appellant analogizes this case to *Sneed v. State*, 803 S.W.2d 833 (Tex.App.—Dallas 1991, pet. ref'd); *see also, Mott v. State*, 835 S.W.2d 256 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd); *Green v. State*, 891 S.W.2d 289 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd) (declining to follow *Mott* and adopting *Sneed*). In *Sneed*, the Dallas Court of Appeals held that, in an aggravated assault charge, it was error to include conduct language in the definition of knowingly or intentionally. This court rejected *Sneed* in both *Mott v. State*, 835 S.W.2d at 259, and *Castillo v. State*, 899 S.W.2d 391, 394–94 (Tex.App.—Houston [14th Dist.] 1995, no pet.). Both *Mott* and *Castillo* included definitions of "knowingly" and "intentionally" similar to the ones that were included in the present case. In those cases, the court looked to the definition and application para-

graphs and determined that, because result of conduct language appeared therein, there was no error in the charge. *Castillo*, 899 S.W.2d at 394; *Mott*, 835 S.W.2d at 259. However, in *Cook*, the Court of Criminal Appeals noted that error is not cured when the application paragraph limits the culpable mental state to the factual context. *Cook*, 884 S.W.2d at 491 (overruling *Kinnamon v. State*, 791 S.W.2d 84 (Tex.Crim.App.1990), *cert. denied*, ―― U.S. ――, 115 S.Ct. 660, 130 L.Ed.2d 595 (1994) (holding the application paragraph can cure error in the definitions)); *see also Patrick v. State*, 906 S.W.2d 481 (Tex.Crim. App.1995), *cert. denied*, ―― U.S. ――, 116 S.Ct. 1323, 134 L.Ed.2d 475 (1996). Therefore we believe *Cook* resolved the conflict between the Dallas Court of Appeals and this court regarding charge error. However, as explained hereinaf-

■ Applying the court's holding in *Cook*, we find that the definitions in the charge should not have contained references to conduct. However, a mistake in the charge does not in and of itself require reversal. Appellant did not object to the charge, therefore, the case may only be reversed if the error was so harmful that appellant was denied "a fair and impartial trial." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985), *cert. denied*, 481 U.S. 1019, 107 S.Ct. 1901, 95 L.Ed.2d 507 (1987). In other words, the appellant must have suffered "egregious harm." *Id.* at 171. The factors to consider in determining the degree of harm are: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Id.* at 171.

■ In assessing harm from the inclusion of improper conduct elements in the definitions of culpable mental states, we "may consider the degree, if any, to which the culpable mental states were limited by the application portions of the jury charge." *Hughes v. State*, 897 S.W.2d 285, 296 (Tex. Crim.App.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1967, 131 L.Ed.2d 857 (1995) (quoting *Cook*, 884 S.W.2d at 492, fn. 6). In the present case, the application paragraphs of the jury charge provide as follows:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 24th day of May, 1992, in Harris County, Texas, the defendant, Latonya Denise Harrell, did then and there unlawfully, *intentionally or knowingly cause the death of Jerry Harrell*, by shooting Jerry Harrell with a deadly weapon, namely a firearm; or if you find from the evidence beyond a reasonable doubt that on or about the 24th day of May, 1992, in Harris County, Texas, the defendant, Latonya Denise Harrell, did then and there unlawfully intend to cause bodily injury to Jerry Harrell, and *did cause the death of Jerry Harrell* by intentionally or knowingly committing an act

ter, the court may look to the application and definition paragraphs when conducting a harm analysis. *See Hughes v. State*, 897 S.W.2d 285,

clearly dangerous to human life, namely, by shooting Jerry Harrell with a deadly weapon, namely a firearm, then you will find the defendant guilty of murder as charged in the indictment.

You are further instructed that before a person can be guilty of murder, she must have *intentionally or knowingly caused the death*, or she must have intended to cause serious bodily injury and have intentionally or knowingly committed an act clearly dangerous to human life 'that *caused the death of the deceased.*

(Emphasis added).

The application paragraphs in this case, and the definitions of "intentionally and knowingly," are nearly identical to those in *Hughes*, 897 S.W.2d at 296. There the court noted that, although the definitions of "intentionally" and "knowingly" set forth three alternative elements of conduct, when viewed in their factual context it was apparent which conduct element applied to the offense. *Id.* The application paragraph in *Hughes* stated that appellant "did intentionally and knowingly cause the death of [the victim]." *Id.* Referring back to the definitions of culpable mental states, the court held: "it is obvious that the 'result of conduct' and 'cause the result' language are the applicable portions of the full code definitions." *Id.* The court concluded:

... because the facts, as applied to the law in the application paragraph, pointed the jury to the appropriate portion of the definitions, no harm resulted from the court's failure to limit the definitions of culpable mental states to result and circumstances of conduct.

*Id.* at 296–97. The Court of Criminal Appeals reached the identical result in *Patrick v. State*, 906 S.W.2d 481, 493 (Tex.Crim.App. 1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1323, 134 L.Ed.2d 475 (1996).

We conclude that the facts as applied to the law in the application paragraph pointed the jury to the proper result oriented culpable mental state portion of the definitions. Consequently, no harm resulted from the

296–97 (Tex.Crim.App.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1967, 131 L.Ed.2d 857 (1995).

court's failure to limit the definitions of "intentionally" and "knowingly" to the result of appellant's conduct.

Point of error number one is overruled.

## Point of Error No. 2

In her second point of error, appellant argues that she was denied effective assistance of counsel because her attorney: (1) failed to object to the jury charge; (2) failed to object to improper jury argument; and (3) failed to inform her she could have received probation if she elected to have the jury assess punishment.

■ Appellant's first two designations of error deal with the effectiveness of counsel at the guilt-innocence stage of trial. The United States Supreme Court has established a two-prong test to determine whether counsel is ineffective at the guilt-innocence stage of trial. First, appellant must demonstrate that counsel's performance was deficient and not reasonably effective. Second, appellant must demonstrate that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Appellant must show that (1) counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *Id.; Jenkins v. State,* 870 S.W.2d 626, 629 (Tex.App.— Houston [1st Dist.] 1994, pet. ref'd), *cert. denied,* —— U.S. ——, 116 S.Ct. 791, 133 L.Ed.2d 740 (1996).

■ In determining whether counsel's trial performance was deficient, judicial scrutiny must be highly deferential. A reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. An ineffectiveness of counsel claim cannot be demonstrated by isolating one portion of counsel's representation. *McFarland v. State,* 845 S.W.2d 824, 843 (Tex.Crim.App. 1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). Therefore, in determining whether the *Strickland* test has

been met, counsel's performance must be judged on the totality of the representation. *Strickland,* 466 U.S. at 670, 104 S.Ct. at 2056.

■ Appellant first claims that she was denied effective assistance when her counsel failed to object to the improper jury charge. Even if we did assume *arguendo* that counsel's failure to object to the charge fell below an objective standard of reasonableness, we have already found that no harm resulted from the court's failure to limit the definitions of culpable mental state in the charge to the result of appellant's conduct. Therefore we are unable to conclude that, but for the failure to object to the charge, the outcome of the proceedings would have been different. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

■ Appellant next claims that she was denied effective assistance of counsel because her attorney failed to object to an improper jury argument. Soon after she was arrested, appellant made a videotaped statement at the police station. During final argument, the State made the following comments to the jury:

Let's talk about the specifics of what she testified to. There's a lot of inconsistencies, things that don't make sense. Inconsistency, *she told you she had to sit back in this room with her attorney prior to getting on the witness stand to see the videotape.* She was able to do that and tried to remember what she was going to say before she said it. *We all know that lies are harder to keep track of than the truth.*

(Emphasis supplied by appellant).

■ We must first decide whether the prosecutor's statements were objectionable, because an attorney's failure to object to proper argument cannot be ineffective assistance. *Cooper v. State,* 707 S.W.2d 686, 689 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd). Permissible jury argument falls within one of four general areas: (1) a summary of the evidence; (2) a reasonable deduction from the evidence; (3) an answer to the opponent's argument; or (4) a plea for law enforcement. *Alejandro v. State,* 493 S.W.2d 230, 231–32 (Tex.Crim.App.1973).

■ Appellant contends the State's argument was improper because it misstated the evidence. The State counters that the argument was a reasonable deduction from the evidence. We agree. Counsel is generally afforded a wide latitude in drawing inferences from the record as long as those inferences are reasonable and offered in good faith. *Cantu v. State*, 842 S.W.2d 667, 690 (Tex.Crim.App.1992), *cert. denied,* 509 U.S. 941, 114 S.Ct. 16, 125 L.Ed.2d 768 (1993); *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim.App.1988). While there was no direct testimony that appellant had to see the tape before she testified *in order to get her story straight,* this is a reasonable inference from the testimony that appellant was offered the opportunity to see the videotape before she testified. We find the argument to be a reasonable inference from the evidence and therefore proper. As a result, trial counsel's failure to object could not be ineffective assistance.

■ Appellant finally argues that her trial counsel was ineffective during the punishment phase because he failed to inform her that she could receive probation if she elected to have the jury assess punishment.[2] Unlike allegations of ineffective assistance at the guilt-innocence stage, allegations at the punishment stage are governed by the "reasonably effective assistance of counsel" standard. *Ex parte Cruz*, 739 S.W.2d 53, 58 (Tex.Crim.App.1987). Reasonably effective assistance is to be determined from the totality of the representation of the accused. *Id.* The constitutional right to effective assistance of counsel does not mean errorless counsel, or counsel whose competency is to be judged by hindsight. *Id.* Rather, the right entitles appellant to counsel "reasonably likely to render and rendering reasonably effective assistance." *Ex parte Duffy*, 607 S.W.2d 507, 514 n. 14 (Tex.Crim.App. 1980). To prevail, appellant's allegations of

ineffective assistance of counsel must be "firmly grounded in the record." *Powers v. State*, 727 S.W.2d 313, 316 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd).

The statement of facts shows that at the sentencing proceedings the court inquired: "You understand, ma'am, this court cannot grant you probation?" Appellant replied, "yes." The trial court later asked appellant if she knew at the time she elected to have the court assess punishment that the jury could grant probation. Appellant responded that she did. The court asked again if she understood the court could not grant probation. Appellant replied: "I didn't understand the jury could grant me a probation and the court could not. I just understood that I wasn't eligible for probation." The court then asked if, at the time the jury returned its verdict, she decided she didn't want them to consider punishment but wanted the court to sentence her. Appellant responded in the affirmative. The court inquired of appellant's counsel: "And, counsel, did you fully explain to your client that the Court could not grant probation but the jury could? Appellant's counsel responded: "I did, your Honor."

Appellant contends her trial counsel's statement should be ignored because he filed the motion for probation on the same day he filed the motion requesting the court to assess punishment. According to appellant, this shows that her counsel could not have properly informed her because he did not know himself that the court could not grant probation. However, as pointed out by the State, it is unclear which motion was first filed. The motion for probation may have been filed prior to appellant's election to have the court assess punishment. The motion for probation is a standard form that reflects whether the defendant wishes the court or the jury to grant probation. The form is

---

2. A defendant convicted of an offense is not eligible for court ordered probation where an affirmative finding on the use of a deadly weapon is made. Tex.Code Crim.Proc. art. 42.12 § 3g(a)(2). No such limitation on probation applies where the jury recommends probation. Tex.Code Crim.Proc. art. 42.12 § 4. In this case, the indictment alleged appellant used and exhibited a deadly weapon. The jury found appellant

guilty "as charged in the indictment." The trial court, therefore, was bound to enter an affirmative finding in the judgment and was prevented from granting probation at the punishment stage. *Martinez v. State*, 874 S.W.2d 267, 268 (Tex. App.—Houston [14th Dist] 1994, pet. ref'd); *Polk v. State*, 693 S.W.2d 391, 396 (Tex.Crim.App. 1985).

generic for all felonies, including those where the court may assess probation. Without more, we cannot simply ignore counsel's statement to the trial court that he fully informed appellant the jury could assess probation and the court could not. Absent an affirmative showing in the record that counsel's statement was untrue, we cannot find ineffective assistance of counsel.[3]

Point of error number two is overruled.

## Point of Error No. 3

▇ In her final point of error, appellant contends the judgment against her is void because the jury consisted of only eleven jurors. The record reflects that on November 19, 1993, the trial was recessed. When the trial resumed on November 29, 1993, the following exchange occurred:

THE COURT: Mr. Jackson, this is by your agreement; is that correct?

MR. JACKSON: That's correct.

THE COURT: *And, Ms. Harrell, this is with your agreement; is that correct?*

THE DEFENDANT: *Yes sir.*

MS. TIRNEY: Can we have on the record which juror is not here?

THE COURT: It is juror No. 7 . . . It has been agreed by the parties that we will proceed with eleven jurors.

(Emphasis added).

The State argues that appellant and her counsel agreed to the absence of the twelfth juror, thereby waiving any error. Appellant argues that, regardless of her agreement, the trial could not go forward because the State failed to ensure that the agreement was in writing, as required by TEX.CODE CRIM.PROC. art. 1.13.

In order to waive a trial by jury, TEX.CODE CRIM.PROC. art. 1.13 provides that the defendant must consent to the waiver in person, in writing, in open court. However, appellant did not waive a trial by jury; rather, she agreed to go forward with eleven jurors. Therefore, this statute does not apply.

Article V, § 13 of the Texas Constitution mandates a petit jury of twelve jurors in district courts. An exception is allowed when a juror becomes disabled. In that instance the remainder of the jury may render the verdict. In the present case, the record does not reflect whether or not the missing juror was properly excused. The specific issue before us is whether appellant's waiver of her right to a jury of twelve was valid even though not in writing. We believe that it was.

In *Bates v. State*, 843 S.W.2d 101 (Tex. App.—Texarkana 1992, no pet.), the court determined that a jury of eleven could not render a verdict when there was *no agreement at all* to proceed with eleven jurors. The court held that in the face of a silent record, waiver of a right to a jury of twelve would not be presumed. *Id.* at 104. The court stated: "[e]ven if the waiver of a full jury does not require the same formality as a waiver of a jury itself, there must be some affirmative waiver on the part of the defendant." *Id.* In the present case, appellant made an affirmative statement on the record, in open court, that she agreed to go forward with eleven jurors. The decision to proceed was agreed to on the record by appellant, her counsel, the State and the court. We believe that under these circumstances, appellant's waiver was sufficient.

Point of error number three is overruled.

▇

---

3. Because appellate counsel did not file a timely motion for new trial and seek an evidentiary hearing on this matter, the record is insufficient to establish trial counsel's deficient conduct.

*Phetvongkham v. State*, 841 S.W.2d 928, 932–33 (Tex.App.—Corpus Christi 1992, pet. ref'd, untimely filed).