Delbert Boyd TEAGUE, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 69716.

Court of Criminal Appeals of Texas,
En Banc.

June 23, 1993.

Rehearing Denied Sept. 29, 1993.

Richard Alley, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and C. Chris Marshall, Betty Marshall and Greg Pipes, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

McCORMICK, Presiding Judge.

Delbert Boyd Teague was convicted of capital murder while in the course of kidnapping or attempted kidnapping. V.T.C.A., Penal Code, Section 19.03(a)(2). After the jury answered the special issues in the affirmative, the trial court assessed the death penalty. See Article 37.071, Section 2(b), V.A.C.C.P. On direct appeal to this Court, appellant raises twenty-two points of error. We shall affirm.

Because appellant does not challenge the sufficiency of the evidence, we only briefly summarize the facts. Viewed in the light most favorable to the verdict, the evidence shows appellant and his cohort, Robin Partine, robbed Donna Irwin and her date, Tommie Cox, late at night at a scenic area overlooking Lake Worth in Tarrant County. After appellant bound Cox with a rope and left him lying face down on the ground, appellant and Partine kidnapped Irwin and left the scene in a truck driven by appellant. As they left the area, they passed three young men in a four-wheel drive vehicle going the other way in the direction of where Cox had been left. Appellant turned the truck around and began to follow the four-wheel drive vehicle.

Cox had managed to set himself free, and he approached the four-wheel drive vehicle on foot as it drove toward him. When the four-wheel drive vehicle stopped, Cox told its occupants about what had happened and asked for help. Appellant suddenly appeared on foot, shot each occupant in the four-wheel drive vehicle at least once in the head, and took their wallets. Cox escaped uninjured. One of the occupants of the four-wheel drive vehicle died from his injuries and

another suffered permanent brain damage. The other occupant, James Bell, recovered from his wounds and testified at appellant's trial.

After the shootings, appellant and Partine left the scene in their truck with Irwin. Later that night, they took turns sexually assaulting her. Appellant and Partine were eventually arrested in Louisiana after Irwin had left a note, saying she had been kidnapped, in a women's restroom at a gas station. Irwin also testified at appellant's trial.

### Pretrial Motions

■ In points of error eleven, twelve and thirteen, appellant contends that the trial court's failure to appoint a psychiatrist or psychologist to assist his attorneys at voir dire, as requested in pretrial motions, denied him effective assistance of counsel, equal protection and due process under the law.

Appellant has presented no authority, argument, or evidence to show that he was entitled to, or would benefit from, the assistance of a psychologist or psychiatrist during jury voir dire. See *Rivera v. State*, 808 S.W.2d 80 (Tex.Cr.App.1991); *Goodwin v. State*, 799 S.W.2d 719 n. 1 (Tex.Cr.App.1990) (appellant provides no argument or authority therefore we will consider the point inadequately briefed and will not address it). Accordingly, appellant's points of error eleven, twelve, and thirteen are overruled.

■ In his fourteenth point of error, appellant contends that the trial court erred in denying his pretrial motion for the production of grand jury witnesses in violation of Article 20.20, V.A.C.C.P., which requires the State's attorney to endorse on an indictment "the names of the witnesses upon whose testimony the [indictment] was found." See *Jenkins v. State*, 468 S.W.2d 432, 435 (Tex. Cr.App.1971) (this provision is directory rather than mandatory). Appellant argues that denial of this motion unduly restricted the ability of appellant's counsel to provide effective assistance of counsel by denying him information upon which the grand jury based the indictment. We disagree.

The trial court clearly stated that the motion was denied because no witnesses testified before the grand jury; the indictment was based upon the State's file in this case. The judge did order the State to present to appellant a list of witnesses who would be called by the State at trial and the State complied. Therefore, appellant's point of error fourteen is overruled.

■ In point of error twenty, appellant contends that the trial court should have granted his motion for a change of venue because of the prejudicial pretrial publicity surrounding this case. A change of venue may be granted in a felony case if "there exists in the county where the prosecution is commenced so great a prejudice against [a defendant] that he cannot obtain a fair and impartial trial." Article 31.03, V.A.C.C.P. The test to be applied in determining whether a trial court should grant a motion to change venue is whether the outside influences affecting the community climate of opinion as to a defendant are so inherently suspect as to raise doubt about the likelihood of obtaining a fair and impartial jury. *Beets v. State*, 767 S.W.2d 711, 742 (Tex.Cr.App. 1988) (op. on reh'g); *Phillips v. State*, 701 S.W.2d 875, 879 (Tex.Cr.App.1985), cert. denied, 477 U.S. 909, 106 S.Ct. 3285, 91 L.Ed.2d 574 (1986), *overruled in part on other grounds, Hernandez v. State*, 757 S.W.2d 744, 751–52 n. 15 (Tex.Cr.App.1988), cert. denied, —— U.S. ——, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992), *overruled in part, Fuller v. State*, 829 S.W.2d 191, 200 (Tex.Cr.App. 1992). The mere fact of media attention and publicity do not, however, automatically establish prejudice or require a change of venue. *Freeman v. State*, 556 S.W.2d 287, 297 (Tex.Cr.App.1977), cert. denied, 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 794 (1978). Furthermore, jurors do not have to be totally ignorant of the facts and issues of a particular case. *Ransom v. State*, 789 S.W.2d 572, 579 (Tex.Cr.App.1989), cert. denied, 497 U.S. 1010, 110 S.Ct. 3255, 111 L.Ed.2d 765 (1990). Rather, a defendant seeking a change of venue must demonstrate an actual, identifiable prejudice attributable to the pretrial publicity on the part of the community from which members of the jury will come. *Id.* at 578; see also *Nethery v. State*, 692 S.W.2d

686, 694 (Tex.Cr.App.1985), cert. denied, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986). He or she must demonstrate that publicity about the case is pervasive, prejudicial, and inflammatory. *Ransom*, 789 S.W.2d at 579. When a motion for change of venue is denied, this Court on appeal reviews whether the trial court abused its discretion in refusing to grant the change of venue. *Id.*

Appellant was indicted on August 20, 1985, for an offense that occurred on April 29, 1985. He filed a motion for change of venue in January of 1986, alleging "extreme" pretrial publicity in local newspapers and extensive television and radio coverage in Tarrant County and adjoining counties. At the hearing on the motion held in June of 1986, appellant placed into evidence four specific news clippings—three had appeared in the *Fort Worth Star–Telegram* and one in a national newspaper, *The Star*. Appellant also introduced videotape copies of news stories that were broadcast on network television on two different channels, but an investigator for the defense testified that only three television channels out of seven in the metroplex area had carried stories concerning appellant's case and that only three newspapers in the area had covered the case.

It is clear from the record that appellant failed to establish that any members of his jury were prejudiced by the publicity. See *Gardner v. State*, 733 S.W.2d 195, 204 (Tex. Cr.App.1987) (mere fact that 15 of 77 potential jurors dismissed because they held conclusions as to guilt because of publicity does not in and of itself establish the inability of appellant to be tried by impartial jury). It is apparent from the voir dire records that the members of appellant's jury had little or no knowledge about the offense; in fact, six jurors knew nothing about the facts of the offense. Two jurors knew that the offense had occurred but knew no details. Three jurors each recalled one specific fact[1] but pledged to consider only the evidence admitted at trial. Juror Osburn admitted that he could remember hearing the facts of the offense on a television broadcast, but expressly stated that he could set aside that

information because "you can't believe half of what you hear or see anyway." Since appellant did not show the outside influences affecting the community as to him were so inherently suspect as to raise doubt about the likelihood of obtaining a fair and impartial jury, the trial court did not abuse its discretion. See *Faulder v. State*, 745 S.W.2d 327, 338–39 (Tex.Cr.App.1987); see also *Phillips*, 701 S.W.2d at 880; *Nethery*, 692 S.W.2d at 695. Appellant's twentieth point of error is overruled.

### Voir Dire

■ In points of error sixteen and seventeen appellant claims the trial court erred by holding a portion of his trial—specifically voir dire—in a place other than that mandated by Section 24.910 of the Texas Government Code and Article 1602, V.A.C.S. Jury voir dire in appellant's trial was not held in the Criminal District Court Number One courtroom in the Fort Worth Criminal Courts Building, but instead was held in the Ajax Building which is located in Fort Worth at the corner of Commerce and Weatherford Streets. Appellant did not object until he filed a motion for new trial in which he contended that the relocation violated the mandates of Section 24.910, supra, and Article 1602, supra.

We find that appellant has not preserved these complaints for appellate review because he did not timely object in the trial court. Tex.R.App.Pro. 52(a); *Ransom*, 789 S.W.2d at 585; *Smith v. State*, 683 S.W.2d 393, 407 (Tex.Cr.App.1984). Moreover, appellant does not contend that the relocation was harmful or affected the fairness of the voir dire process. Points of error sixteen and seventeen are therefore overruled.

■ Appellant claims in point of error twenty-two that Section 12.31(b) of the Texas Penal Code is unconstitutional because it violates his rights to due process, fundamental fairness, and a representative jury. See *Adams v. Texas*, 448 U.S. 38, 48–51, 100 S.Ct. 2521, 2528–29, 65 L.Ed.2d 581 (1980). This issue has been decided adversely to

---

1. The three "specific" facts that each of these jurors recalled are: "it [the offense] happened at

a lake," "a girl left a note in a restaurant," and the name "Inspiration Point" rang a bell.

appellant in *Granviel v. State,* 723 S.W.2d 141, 154 (Tex.Cr.App.1986), cert. denied, 484 U.S. 872, 108 S.Ct. 205, 98 L.Ed.2d 156 (1987). Appellant does not claim that any jurors were excluded from service because they were unwilling to take the oath, or even that any balked or expressed reservations about taking the oath; rather, he challenges the entire panel by arguing that the invalidity of Section 12.31(b) destroys the integrity of the jury. See *Gardner,* 733 S.W.2d at 205. Since the Section 12.31 oath is unconstitutional under *Adams* only if it is used to disqualify venire members, point of error twenty-two is overruled.

■ In point of error one, appellant contends the trial court erred in restricting his voir dire of veniremember Hicks by cutting off questions concerning whether she understood there was a difference between the terms "intentionally" and "deliberately."

The record reflects appellant attempted to ask Hicks the following questions:

"Q. [Appellant]: *Thank you. Ms. Hicks, if a Jury found [appellant] guilty of an intentional taking of a life while in the course of committing kidnapping, and they were called upon to answer these three questions [i.e., the special issues] that we've been talking about, do you feel that intentionally and deliberately are the same?*

"[The State]: Your Honor, we're going to object under the Charles Melton versus The State of Texas case that requesting of her her definition of deliberately is an improper question which should not be allowed of the Jury. If it is a term of ordinary usage the juror can determine for themself what it is and we don't have a right to ask what they feel it is.

"[The Court]: I'm going to sustain the objection to your last question.

"[Appellant]: I didn't ask for a definition, Judge. I asked her in her own mind if she felt they were the same.

"[The State]: He gave her a definition and asked if she agreed with it, so it requires her to tell—

"[The Court]: I understand, Counsel. I sustained the objection to your last question.

"[Appellant]: Please note our exception.

"[Appellant]: *Let me ask it this way, Ms. Hicks, does it follow that an act that's intentionally done, is the same as an act that's deliberately done?*

"[The State]: Once again, Your Honor, we would object as calling for her to determine what her definition or reveal what her definition of deliberately would be.

"[The Court]: I sustained the objection, Counsel.

"[Appellant]: Again, please note our exception, Judge."

(Emphasis Supplied).

Appellant later exercised a peremptory challenge on Hicks after the trial court denied the following challenge for cause appellant made to her because she would have expected appellant to testify on his own behalf under certain circumstances.

"[Appellant]: Your Honor, at first we would challenge for cause based on the fact that [Hicks] answered that if sufficiently damaging evidence was presented by the State, that she would expect [appellant] to come forward with testimony. That's in violation of his Fifth Amendment Right to remain silent. And we would challenge for cause."

■ In a capital murder case, it is proper for a defendant to question potential jurors on whether they understand there is a difference between a murder committed "intentionally" and a murder committed "deliberately" so the defendant may intelligently exercise his peremptory challenges or lay a predicate for a proper challenge for cause. See *Gardner v. State,* 730 S.W.2d 675, 684–85 (Tex.Cr.App.), cert. denied, 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987); *Smith v. State,* 703 S.W.2d 641, 643 (Tex.Cr.App.1985). That is what appellant attempted to do here, and the trial court erred in not affording appellant this right which denied appellant the opportunity to intelligently exercise his peremptory strike on Hicks. See *Gardner,* 730 S.W.2d at 690.

We also have held, however, that in a capital case, the denial of intelligent use of a peremptory challenge on a single veniremember may be harmless. See *id.* Here, the trial court granted appellant a single additional peremptory challenge after appellant had used his fifteenth peremptory challenge. Therefore, unless appellant can show he needed an additional peremptory challenge to cure the trial court's failure to grant a legitimate challenge for cause by appellant, we cannot reverse this conviction on the basis of appellant's first point of error. See *Gardner,* 730 S.W.2d at 690;[2] see also *Martinez v. State,* 763 S.W.2d 413, 415 (Tex.Cr.App.1988).

Appellant contends in his second point of error that the trial court erred in granting the State's challenge for cause to veniremember Hinsley based on economic reasons. A juror may be excused on a challenge for cause when voir dire discloses a fact that would render the juror "incapable or unfit to serve." *Henley v. State,* 644 S.W.2d 950, 957 (Tex.Cr.App.1982); see also *Nichols v. State,* 754 S.W.2d 185 (Tex.Cr.App.1988); *Gomez v. State,* 709 S.W.2d 351, 354 (Tex.App.—Houston [14th Dist.] 1986, pet. ref'd) (reviewing court must consider evidence of juror's economic strain and ability to decide case fairly in light most favorable to the trial court's ruling).

Here juror Hinsley owned and operated a one-man auto mechanic shop in Haltom City. He did not have enough work to hire anyone else full-time or even part-time, and he had to work so many hours to keep the business going that he had no time for hobbies or recreation. Venireperson Hinsley testified that if he served on a jury for seven to 14 days, no one would be at his shop to keep it open and that "it would mean me going broke." As a result, he stated that he would be preoccupied during the trial with concern about his business. The State challenged venireperson Hinsley for cause, based upon his preoccupation with his economic situation. Upon further questioning, Hinsley verified that his business going "under"

would definitely influence his ability to be a fair and impartial juror. The trial court granted the State's challenge and excused Hinsley from jury duty. Appellant had no questions for Hinsley and made no objection to his excusal until after he was gone—i.e. the trial court had excused him. Therefore, appellant has waived any error he might claim on appeal. See *Mays v. State,* 726 S.W.2d 937, 950 (Tex.Cr.App.1986), cert. denied, 484 U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1020 (1988) (any error waived by failure to object to excusal for economic hardship). Moreover, we have held a trial court does not abuse its discretion in *sua sponte* excusing a veniremember for economic reasons. See *Butler v. State,* 830 S.W.2d 125, 132 (Tex.Cr.App.1992). Therefore, even had appellant preserved error, he would not be entitled to relief. Appellant's second point of error is overruled.

Appellant's third through fifth points of error respectively assert the trial court improperly overruled his challenges for cause to veniremembers Osburn, Williams and Swindell. The record reflects appellant exercised peremptory challenges on Williams and Swindell after the trial court denied his challenges for cause to them. When Osburn was later seated as the twelfth juror, appellant had exhausted all of his peremptory challenges, and he requested an additional peremptory challenge to use on Osburn which the trial court denied. Appellant then challenged Osburn for cause which was denied. Appellant identified Osburn as an objectionable juror and renewed his request for an additional peremptory challenge which was denied. See *Demouchette v. State,* 731 S.W.2d 75, 83 (Tex.Cr.App.1986), cert. denied, 482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987); *Sharp v. State,* 707 S.W.2d 611, 622 (Tex.Cr.App.1986), cert. denied, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). We apply a deferential standard in reviewing a trial court's denial of a challenge for cause to determine whether the trial court abused its discretion. *Bell v. State,* 724 S.W.2d 780,

---

**2.** On appeal, appellant does not claim the trial court prevented him from properly questioning any other veniremember upon whom appellant exercised a peremptory challenge. See *Gardner,* 730 S.W.2d at 690.

797 (Tex.Cr.App.1986), cert. denied, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987).

■ Appellant's third point of error claims the trial court improperly overruled his challenge for cause to Osburn because he had a bias or prejudice against appellant and the law applicable to appellant's case under Article 35.16(a)(9) and (c)(2), V.A.C.C.P.[3] Appellant's seventh point of error asserts the trial court erroneously denied his request for an additional peremptory challenge to remove Osburn from the petit jury. Appellant challenged Osburn for cause because he would not consider appellant's age in mitigation of punishment,[4] and he would automatically answer special issue one "yes" based on an earlier finding of guilt.

■ Osburn stated in response to questioning by the defense that he would not consider a defendant's age to be a mitigating factor if the defendant was "legally of age." A trial court abuses its discretion in overruling a challenge for cause to a veniremember who cannot follow the law. See *Trevino v. State,* 815 S.W.2d 592, 614 (Tex.Cr.App.1991), *rev'd on other grounds,* — U.S. —, 112 S.Ct. 1547, 118 L.Ed.2d 193 (1992). The law requires a juror at least to consider youth as a mitigating factor in answering the special issues. See *id.* Here, however, Osburn was not informed the law required him to consider youth or age in mitigation of punishment. Therefore, appellant cannot demonstrate Osburn had a bias against this phase of the law.

Osburn initially testified he understood "intentional" was not the same as "deliberate." In support of this claim, appellant cites to the following portions of the record:

"Q. [By the Defense]: But [the jury] found intentional, intentional act, but here they are asked to find whether or not the conduct was deliberate and it was with the reasonable expectation that the death of the deceased or another would result.

"So my question to you is: If you were on a jury that had found someone guilty of capital murder at the first phase, now that you go to the second phase would you look at punishment issue one and would you determine that that automatically must be answered yes based on your earlier finding?

"A. [By Osburn]: I would feel like it would, if I found him guilty of the first.

"Q. Why do you feel it should be automatically be answered yes?

"A. Because they proved it without a shadow of a doubt he was guilty.

"Q. In other words, that question in your own mind and that's the only thing important to us now, in your own mind that question is not asking you to do anything additional to the finding you already made at the first phase of the trial?

"A. I don't feel like it is, no."

Later, the following exchange occurred between Osburn and the prosecutor:

"Q. [By the Prosecutor]: And, if the facts didn't show that a yes answer was proved to you beyond a reasonable doubt you wouldn't answer it no—you would answer it no unless it was proved yes?

"A. [By Osburn]: Right.

"Q. So, when you would—would it be fair to say that when you had—when [appellant's counsel] asked you some questions about answering yes, you wouldn't answer—you wouldn't write down yes unless it was proven to you considering all of the evidence that you might hear whether it came to you in the first phase of the trial or you might hear some evidence in the second phase of a trial that might relate to that issue and you would keep an open mind and not answer it until you had heard all of the evidence; is that true?

"A. Right.

"Q. In a particular case, and we're not talking about this particular case, but in a case in general in the abstract, it is possible under a given set of facts for a juror to find and a whole jury to be convinced that

---

3. The record reflects appellant did not challenge Osburn under Article 35.16(a)(9); therefore, only appellant's claim under Article 35.16(c)(2) is properly before this Court. Tex.R.App.Pro. 52(a).

4. Appellant was 22 years old at the time of the offense.

a defendant acted intentionally and yet when they had heard all of the evidence, it might still be that they would answer the question no, if the evidence in total doesn't justify a yes answer, and if you were not convinced that a yes answer was appropriate, would you answer that first question no?

"A. I would consider all of the facts before I even answered that question, regardless of where they came, whether the beginning or the middle, I wouldn't attempt to answer it until I had heard all of them and they sayd (sic) that's it, that's all of the facts, now base it on that."

Although Osburn initially indicated to appellant's counsel he "felt" he would automatically answer special issue one "yes" based on an earlier finding of guilt, Osburn's later answers to the prosecutor indicated he would follow the law and answer special issue one based on the evidence presented at both phases of trial. On this record, we cannot say the trial court abused its discretion in overruling appellant's challenge for cause to Osburn, or in denying appellant's request for an additional peremptory challenge to use on Osburn. See *Sattiewhite v. State*, 786 S.W.2d 271, 281 (Tex.Cr.App.1989). Appellant's third and seventh points of error are overruled.

■ Appellant's fourth point of error asserts the trial court improperly overruled his challenge for cause on various grounds to Williams. Appellant claims Williams was objectionable because she would not consider his age, social background and voluntary intoxication in mitigation of punishment; she would automatically answer "yes" to special issue one based on an earlier finding of guilt; and she stated pretrial publicity would influence her verdict. However, appellant did not challenge Williams because she could not consider his age and social background in mitigation of punishment; therefore, these two grounds are not preserved for appeal. Tex.R.App.Pro. 52(a).

■ There was no evidence that appellant was intoxicated when he killed the victim. Therefore, any error in denying appellant's challenge for cause to Williams on this basis was harmless. See *Mays*, supra, at 949–50.

The record reflects the following exchange during initial questioning by the State:

"Q. [By the Prosecutor]: Do you think you—have you read anything in the newspaper, seen anything on television about this case?

"A. [By Williams]: I did at the time.

"Q. Okay. Where was that; was that on television or in the newspaper?

"A. Probably both.

"Q. Having read something in the newspapers or seen something on television, whatever it was that you've remembered, *is there established in your mind such a conclusion as to the guilt or innocence of the [appellant] as would influence you in your action in finding a verdict?*

"A. *I don't think it would influence me.*

"Q. Okay. Do you know what it is that you heard; do you recall?

"A. I just recall something about the kidnapping and going to another State. I mean, I recall it vaguely, you know. I don't know the details of it, but—

"Q. Okay. Did you—were there any photographs that you recall, or film footage or anything accompanying the reports that you saw?

"A. I don't remember.

"Q. *Okay. Do you have any opinions about the case, having heard or read what you've heard or read?*

"A. *No. It's been so long ago.*"

(Emphasis Supplied).

■ Appellant relies on the following dialogue during later questioning by the defense:

"Q. [By the Defense]: ·Okay. Do you recall—Knowing this is a lot—a long time after the fact, but do you recall whether or not at the time, having read the newspapers and having possibly watched TV, that you formed an opinion at that time as to the guilt or innocence of the [appellant]?

"A. [By Williams]: I don't really know.

"Q. I'm asking—

"A. If I could remember the case better I—you know—I could tell you. I guess—I would assume that probably I did form an opinion at the time that I heard it.

"Q. Okay.

"A. You do that in almost anything that you do, you know.

"Q. *Okay. And what I need to ask you is, do you think there's any way possible that that opinion that you formed back then when the publicity was existing, would that influence your verdict in this case if you're chosen to sit on this Jury?*

"A. *It would just depend if I remember the details of it.*"

"Q. *Okay. So, if you could, if the testimony that's brought out in trial brought back those details to you, reinforced and refreshed your recollection, then that possibly could influence your verdict, is that what you're telling me?*

"A. *I suppose it could.*" (Emphasis Supplied).

Appellant argues, "[O]nce [Williams initially] stated what she read would influence her verdict she was disqualified as a matter of law...." See Article 35.16(a)(10), V.A.C.C.P. We disagree. Nothing in Williams' initial voir dire testimony indicated she actually ever had formed a conclusion on appellant's guilt or innocence that would influence her verdict. See *Macias v. State*, 733 S.W.2d 192, 193–94 (Tex.Cr.App.1987), cert. denied, 484 U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1021 (1988). Under the applicable, deferential standard of review, we cannot say the trial court abused its discretion in overruling appellant's challenge for cause to Williams on the basis that pretrial publicity would influence her verdict.

Williams initially stated she understood there was a difference between "intentionally" and "deliberately." During later questioning by the defense, Williams stated she would automatically answer special issue one "yes" based on an earlier finding of guilt of capital murder at the guilt-innocence stage. The prosecutor later explained to Williams how a defendant could be found guilty of capital murder under the law of parties, and also explained that special issue one focused the jury's attention on a defendant's individual conduct. The prosecutor also explained that the State may present new evidence at the punishment hearing. Williams then stated she could follow the law and require the State to prove special issue one beyond a reasonable doubt. She also said she would not automatically answer special issue one "yes" without regard to what the evidence was.[5] During later questioning by the defense, Williams stated she guessed there could be a situation where she would answer special issue one "no" after having found a defendant guilty of capital murder:

"Q. [By the Defense]: Can you imagine any case where you were sitting on the punishment phase of a trial, where if the facts justified it and the law allowed it, and having already found [appellant] guilty of intentionally killing someone in the course of committing kidnapping, could you then answer that Number 1 no? And read it carefully.

"A. [By Williams]: And this is on punishment, right?

"A. Yes.

"Q. I guess there could be a situation where it could be no."

Appellant claims Williams was objectionable because she initially stated she would automatically answer special issue one "yes" based on an earlier finding of guilt, and there was no subsequent attempt to rehabilitate her. The record does not support this claim. Although Williams initially indicated she would answer special issue one "yes" based on an earlier finding of guilt, she later said she would not during questioning by the prosecutor. She did not vacillate from this

---

5. "Q. [By the Prosecutor]: So, you wouldn't just automatically answer Question Number 1 yes, without regard to what the evidence is, would you?
"A. [By Williams]: Right.
"Q. Okay. You'd require the State to prove it should be yes. And if we prove it should be yes, then you would answer it yes; is that right?
"A. Yes. Right.
"Q. And if we failed to prove it should be yes, you'd answer no?
"A. Right."

position upon further questioning by the defense. The trial court did not abuse its discretion in overruling appellant's challenge for cause to Williams on the basis that she would automatically answer special issue one "yes" based on an earlier finding of guilt. See *McCoy v. State*, 713 S.W.2d 940, 950–51 (Tex.Cr.App.1986), cert. denied, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). Appellant's fourth point of error is overruled.

Appellant's fifth point of error asserts the trial court erroneously overruled his challenge for cause to Swindell because she could not consider appellant's intoxication and age in mitigation of punishment. However, we find no reversible error because there is no evidence appellant was intoxicated when he killed the victim, and the record reflects Swindell was never informed the law required her to consider youth or age in mitigation of punishment. See *Trevino*, 815 S.W.2d at 614; *Demouchette*, 731 S.W.2d at 83; *Mays*, 726 S.W.2d at 949–50. Appellant's fifth point of error is overruled. Also, having decided the trial court did not err in overruling appellant's challenges for cause to the above-mentioned veniremembers, we also overrule appellant's first point of error. See *Gardner*, 730 S.W.2d at 690.

■ Appellant's sixth point of error alleges the trial court erroneously sustained the State's challenge for cause to veniremember Prater without allowing appellant to question her. The record reflects that in response to initial questioning by the prosecutor, Prater indicated her husband knew the aunt of one of the victims, and Prater and her husband had discussed conversations Prater's husband had with the aunt about the case. Prater unequivocally stated, during further questioning by the prosecutor, that based on the news coverage and other factors, she had established in her mind a conclusion on appellant's guilt or innocence which would influence her action in finding a verdict.

"Q. [By the State]: Well, based upon the news coverage, based upon the conversations with your husband, or any other person related either to the victim's aunt, or to the publicity that this case has received, is there established in your mind such a conclusion as to the guilt or innocence of

the Defendant as would influence you in your action in finding a verdict?

"A. [By Prater]: I feel like it would.

"Q. Okay. So, is that a yes answer?

"A. Yes."

The trial court granted the State's challenge for cause to Prater under Article 35.-16(a)(10), V.A.C.C.P. As the trial court excused Prater, appellant made the following objection:

"Judge, we object to the granting of the State's challenge for cause with respect to [Prater], in that the Prosecutor asked—the Prosecutor did not properly follow [Article 35.16(a)(10) ] in asking his question.

"It requires that the juror be asked, 'Is there such a conclusion as to the guilt or innocence of the Defendant, from hearsay or otherwise, as would influence the juror in his or her action in finding a verdict. To ascertain whether this cause of challenge exists, the juror shall first be asked whether in his opinion the conclusion so established will influence his verdict.' And that's a two-part question the Prosecutor asked, as I understood it, one question. And we object that he did not follow exactly the requirements of the Statute."

■ Appellant challenged the form of the prosecutor's question when he objected at trial. On appeal, he challenges the evidence and rationale behind sustaining the challenge for cause. The objection at trial does not comport with the complaint on appeal; therefore, nothing is preserved for review. See *McNairy v. State*, 835 S.W.2d 101, 108 (Tex. Cr.App.1991). Moreover, Prater unequivocally stated that, based on pretrial publicity and other factors, she had formed a conclusion on appellant's guilt or innocence that would influence her in finding a verdict. Therefore, any error in not allowing appellant an opportunity to question Prater was harmless. See *Perillo v. State*, 656 S.W.2d 78, 80–81 (Tex.Cr.App.1983), cert. denied, 492 U.S. 925, 109 S.Ct. 3263, 106 L.Ed.2d 608 (1989). Appellant's sixth point of error is overruled.

Appellant's eighth through tenth points of error complain about the court's charge at the guilt-innocence phase. Appellant's

eighth point of error asserts the trial court erroneously overruled his objection to the charge which unsuccessfully attempted to apply the law of parties to the facts of the case. The ninth point of error asserts the trial court erroneously overruled appellant's special requested charge number one. And, the tenth point of error asserts the trial court fundamentally and reversibly erred in failing to instruct the jury that a specific intent to kill on appellant's part was required before the jury could return a guilty verdict for capital murder.

The record reflects the trial court's charge provided abstract definitions on the law of parties pursuant to V.T.C.A., Penal Code, Sections 7.01(a) and 7.02(a)(2). In the application paragraph, the charge, in relevant part, authorized a capital murder conviction upon a finding that:

"....[appellant] *acting alone or with another for whose conduct he is criminally responsible under the law of parties, if he was,* did then and there intentionally cause the death of [the complainant] by shooting him with a firearm...." (Emphasis supplied).

Appellant's requested charge was substantially the same charge that was actually submitted to the jury except the above emphasized portions pertaining to the law of parties were deleted. Appellant also objected to the charge because it did not specifically set out the name of the person and his conduct for which appellant could be held criminally responsible under the law of parties.[6]

**6.** Appellant made the following objection to the charge:

"....[W]e would object to the charge on parties. We don't feel that in this charge it properly applies the law of parties to the facts of the case. Specifically in number 5, we believe that the name of any person, any other person that my client may have been acting with must be—that person must be named and the person whose conduct that he may be criminally responsible for must be named, and also we feel that it must go further and state specifically whatever conduct may have been committed by this other person, that my client would be responsible for that other person's conduct.

"So on those two bases, Your Honor, we are objecting to how the Court has applied the law of parties to the facts of this case."

Appellant claims the court's charge failed properly to apply the law of parties to the facts of the case because it did not sufficiently inform the jury which specific mode[s] of conduct in V.T.C.A., Penal Code, Section 7.02(a)(2), could form an alternative basis for conviction. See, e.g., *Cuevas v. State,* 742 S.W.2d 331, 352 (Tex.Cr.App.1987), cert. denied, 485 U.S. 1015, 108 S.Ct. 1488, 99 L.Ed.2d 716 (1988); *Johnson,* 739 S.W.2d at 305 n. 4.; *Brown,* 716 S.W.2d at 942, 945. He also claims the court's charge harmed him because it permitted the jury to convict him of capital murder for conduct he neither committed nor intended. We agree that the charge failed properly to apply the law of parties. See *Johnson,* 739 S.W.2d at 305 n. 4. Therefore, appellant is entitled to a reversal unless we find the error harmless. See *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Cr.App.1984) (op. on reh'g); Tex.R.App. Pro. 81(b)(2).

We have held that even where the evidence is sufficient to support a conviction of a defendant as the primary actor, it is reversible error for the trial court to fail to apply the law of parties where the evidence raises the issue of defendant's guilt under the law of parties, and this parties' theory of guilt is best supported by the evidence and most fervently advanced by the State in final jury arguments. See *Johnson,* 739 S.W.2d at 302–05. Here, however, appellant's guilt as the primary actor was the theory best supported by the overwhelming evidence[7] and most fervently advanced by the State in closing arguments.[8] Under these circumstances,

Contrary to the assertions in the State's brief, this objection was sufficient to preserve error. See *Johnson v. State,* 739 S.W.2d 299, 305 n. 4 (Tex.Cr.App.1987); *Brown v. State,* 716 S.W.2d 939, 942, 945 (Tex.Cr.App.1986).

**7.** The State presented two witnesses, Irwin and Bell, who were at the scene. Although their testimony was conflicting on Partine's location during the shootings, Irwin unequivocally identified appellant as the shooter. Bell was not asked by either side whether he could identify the shooter, so he did not identify anyone as the shooter.

**8.** The only evidence we find that even possibly raises the issue of appellant's guilt under the law of parties is Cox's testimony. Cox testified on direct examination for the defense that shortly

any error in refusing appellant's requested charge and in failing properly to apply the law of parties was harmless.

In support of his arguments under these points, appellant primarily relies on *Clark v. Louisiana State Penitentiary*, 694 F.2d 75 (5th Cir.1982). In *Clark*, a capital murder conviction under Louisiana law was reversed on due process grounds even though the evidence tended to show the defendant's guilt as the primary actor, because the jury charge on "conspiracy," which was similar to a law of parties charge, and the prosecutor's argument could have been understood by the jury to permit a capital murder conviction for the defendant's coactor's murderous act where appellant intended only to commit a robbery. *Id.* at 76–78. The main rationale for the opinion was that the *Clark* court was left with "a level of uncertainty and unreliability [in] the fact-finding process that cannot be tolerated in a capital case." *Id.* at 78.

We find *Clark* distinguishable for several reasons. Here, unlike *Clark*, neither the evidence, the charge nor the State's final jury argument could have misled the jury into believing it could have convicted appellant of capital murder even though he intended to commit only a robbery. Compare *id.* at 77–78. More importantly, our prior decisions recognize the special issues at the punishment phase provide "unique criteria for assessment of the penalty of death in capital cases," and they focus the jury's attention on a defendant's individual conduct and not the conduct of his cohorts. See *Andrews v. State*, 744 S.W.2d 40, 51–52 (Tex.Cr.App. 1987), cert. denied, 488 U.S. 871, 109 S.Ct. 182, 102 L.Ed.2d 151 (1988); *Meanes v. State*, 668 S.W.2d 366, 376–80 (Tex.Cr.App. 1983) (Clinton, J., concurring). Based on our

prior discussion and the additional protections afforded by the special issues at the punishment phase to one accused of capital murder, we are not left with "a level of uncertainty and unreliability [in] the fact-finding process" in this case. Therefore, *Clark* does not require a contrary result than that reached here. Appellant's eighth through tenth points of error are overruled.

### Evidence

■ Appellant's fifteenth point of error asserts the trial court erroneously admitted at the guilt-innocence phase of trial evidence of an extraneous offense he committed. On direct examination during the State's case-in-chief, Irwin testified that during the course of the kidnapping as she and appellant were leaving a convenience store in Houston appellant suddenly put his hands over the tatoos on his arms because he saw his old probation officer:

"Q. [By the Prosecutor]: Did the [appellant] say anything or give you any reason why he put his hands over his arms covering the tatoos?

"A. [By Irwin]: He told me that there was a man standing over there talking on the telephone, that it was his old Probation Officer or something like that."

Appellant objected to this testimony because it was not "so clearly interwoven or connected with the offense." On appeal, appellant argues the testimony about his probation officer was an improper reference to an extraneous offense that prejudiced him.

■ This case was tried in July 1986 before the new Rules of Criminal Evidence

---

after the shootings, he gave a statement indicating that both appellant and Partine had guns and fired them at Cox and the three occupants in the four-wheel drive vehicle.

"Q. [By the Defense]: Do you remember telling Detective Roberts that, 'At this time I was standing near the driver's side near the [four-wheel drive vehicle] and [appellant and Partine] started shooting in your direction and you started backing up in the direction towards the lake?'"

"A. [By Cox]: Yes, sir."

On cross-examination, Cox contradicted his earlier statement to Detective Roberts.

"Q. [By the Prosecutor]: When [appellant's] truck pulled up, isn't it true that you saw [appellant] get out of that truck and run up towards the [four-wheel drive vehicle]?

"A. Yes, sir.

"Q. And, isn't it true that he had a gun in his hand?

"A. Yes, sir.

"Q. And, isn't it true that [Partine] did not— you did not see [Partine] get out of that truck?

"A. Yes, sir.

"Q. Isn't it true that you did not see [Partine] with a gun in his hand?

"A. Yes, sir."

became effective.[9] Therefore, the evidence was properly admitted as "res gestae" of the offense for which appellant was on trial. See *Maynard v. State*, 685 S.W.2d 60, 66–67 (Tex.Cr.App.1985) (decided under former law). Moreover, when this testimony was admitted, Irwin had already testified appellant had robbed and beaten Cox, kidnapped and sexually assaulted her, shot the three occupants of the four-wheel drive vehicle at least once in the head, and smoked marijuana with Partine after the shootings and the sexual assaults. In final jury arguments, the prosecutor made only one reference to the testimony in support of the State's claim that appellant was the shooter.[10]

"Who hid the tatoos from the man he saw in the convenience store that he saw that he thought was a Probation Officer? You know who did that."

On this record, any error in admitting Irwin's testimony regarding appellant's vague former probationary status was harmless. Appellant's fifteenth point of error is overruled.

■ Appellant's eighteenth and nineteenth points of error complain the trial court erroneously admitted at the punishment phase evidence of appellant's federal firearms violations. His eighteenth point of error claims the trial court reversibly erred by allowing a witness to testify about an offense for which appellant was never charged or arrested. The nineteenth point of error asserts the trial court reversibly erred by allowing hearsay testimony from another witness.

Assistant United States Attorney Worley testified without objection that appellant previously had been convicted in State court of the felony offense of possessing a "shotgun less than 18 inches" for which appellant received a five-year sentence. Worley then testified that federal law prohibits a convicted felon to receive a firearm and to falsely represent to a licensed firearm dealer that he is not a convicted felon. Appellant objected on the basis that he had never been arrested for, or charged with, any federal firearms violations. Later, Kinnard, a federally licensed firearm dealer, testified that according to one of his business records, a person identifying himself as appellant and with the same driver's license number as appellant purchased a firearm shortly before the shootings and represented that he was not a convicted felon.

■ Evidence of unadjudicated extraneous offenses is admissible at the punishment phase of a capital murder trial; therefore, the trial court properly overruled appellant's objection to Worley's testimony. *Harris v. State*, 827 S.W.2d 949, 962 (Tex.Cr.App. 1992). Also, appellant did not object to Kinnard's testimony; therefore, he failed to preserve error. See Tex.R.App.Pro. 52(a). Moreover, Kinnard's testimony was not hearsay. Kinnard's testimony was offered to prove the fact of an assertion, a nonhearsay purpose, and not to prove the truthfulness of the asserted fact, a hearsay purpose. Tex. R.Cr.Evid. 801(d). Appellant's eighteenth and nineteenth points of error are overruled.

■ Appellant's twenty-first point of error asserts the trial court erred in admitting evidence of appellant's prior felony conviction for possessing a "shotgun less than 18 inches" because that conviction was based on an information and there is no evidence appellant waived indictment. The record reflects appellant did not object on the basis he now asserts on appeal; therefore, nothing is preserved for review. See Tex.R.App.Pro. 52(a). In addition, the State is not required to show a waiver of indictment in a prior conviction used to enhance punishment, and appellant points to no evidence in the record where he raised the issue. See *Smith v. State*, 683 S.W.2d 393, 406 (Tex.Cr.App.1984);

---

9. The new Rules of Criminal Evidence became effective September 1, 1986. See Acts 1985, 69th Leg., Ch. 685, p. 5136 §§ 5–9; see also *Mayes v. State*, 816 S.W.2d 79 (Tex.Cr.App.1991); *Montgomery v. State*, 810 S.W.2d 372 (Tex.Cr. App.1990).

10. The prosecutor's entire jury argument cannot be characterized as inviting the jury to use appellant's former probationary status to convict appellant because he was a bad person generally. Rather, the State used this testimony and other properly admitted testimony to argue appellant was the shooter and in charge of the crime spree.

Tex.R.App.Pro. 74(f). Appellant's twenty-first point of error is overruled.

The judgment is affirmed.

OVERSTREET, J., concurs in the result.

CLINTON, Judge, dissenting.

I must dissent to, *inter alia,* the majority's disposition of appellant's seventh point of error. At 512–514. Venireman Osburn testified he would "automatically" answer the first special issue "yes" simply on the basis of having found an accused guilty of an intentional murder. The proposed majority opinion holds that Osburn was rehabilitated on this point, on authority of *Sattiewhite v. State,* 786 S.W.2d 271, at 279–281 (Tex.Cr. App.1989). I dissented in *Sattiewhite,* joined by Judge Duncan, on the ground that the venireman had not been genuinely rehabilitated. Likewise, I do not believe Osburn was genuinely rehabilitated in this case.

The Court held the venireman in *Sattiewhite* to have been rehabilitated because he asserted he could "follow the law" and would wait until all the evidence had been presented at the punishment phase of trial before making his decision as to the first special issue. In dissent I argued that a venireman who cannot tell any difference between "intentional" and "deliberate" cannot be rehabilitated

"by the simple expedient of promising to wait until all the punishment evidence is in to make his determination of 'deliberateness.' If in his mind 'intentional' and 'deliberate' are identical or synonymous, it does not matter *when* he makes the latter determination, so long as it follows his verdict finding that appellant intentionally killed. His resolution of the deliberateness issue will still be predetermined."

*Sattiewhite v. State,* supra, at 291 (Clinton, J., dissenting).

Here, the prosecutor first broached the subject with venireman Osburn of the difference between "intentional" and "deliberate":

"Q. Now, you will notice in [special issue one] that the Legislature has used the term deliberately, and you may recall that earlier I said if a defendant commits an intentional murder in the course of committing say a kidnapping as is set out in this Indictment, in this case. The term intentional has a legal definition and it is—it's a person's conscious objective or desire to engage in the conduct or cause the result. It's a conscious objective or desire to kill somebody or cause their death that you would be dealing with in this kind of case.

The term deliberately does not have a legal definition and therefore the jury is expected to use their own common understanding as to what that term means.

The jury obviously—the Legislature obviously could have used the term intentional but that would be a useless act because the jury will already have determined that the act was intentional, so if they wanted to use intentional instead of deliberately, they surely could have chosen that word.

I assume or I would suggest to you it calls for the jury to take a second look from a different vantage point in answering that question, so a jury doesn't automatically answer Question Number 1 yes solely because they found a defendant acted intentionally at the first phase of the trial and not only just because the its [sic] a different word there *but also because they may not have heard all of the evidence on that particular issue until the close of the trial, so the jury would be expected to not answer that question until they had heard all of the evidence at the trial.*

I take it you would be able to do that?
A. Yes." *

This multifaceted question entailed the qualification that the venireman could wait until all the evidence was in before answering the first special issue. To my way of thinking, Osburn's affirmative answer therefore does not count as an undiluted expression that a finding of intentional murder would not dictate his answer to the deliberateness question. *Sattiewhite,* supra (Clinton, J., dissenting). Later, upon questioning by counsel for appellant, Osburn testified that he agreed

* Emphasis supplied.

with the prosecutor's assessment that "deliberately" "is different than the word intentionally." Asked whether his resolution of the question of intentional murder would "automatically" supply an answer to the first special issue, however, Osburn indicated that it would.

"Q. Do you believe that [special issue one] can be answered automatically yes, if a jury has found someone guilty of capital murder at the first phase of the trial?

A. Say that again.

Q. Do you believe that first issue Punishment Issue Number 1 can automatically be answered yes, if a jury has found someone guilty of committing capital murder at the first phase of a capital murder trial?

A. Evidently I'm not understanding what you're trying to ask.

Q. You see in the first phase of a capital murder trial the jury will have found someone has intentionally or knowingly committed a murder while in the course of committing some other offense such as kidnapping?

A. Okay.

Q. But they found intentional, intentional act, but here they are asked to find whether or not the conduct was deliberate and it was with the reasonable expectation that the death of the deceased or another would result.

So my question to you is: If you were on a jury that had found someone guilty of capital murder at the first phase, now that you go to the second phase would you look at punishment issue one and would you determine that that automatically must be answered yes based on your earlier finding?

A. I would feel like it would, if I found him guilty of the first.

Q. Why do you feel it should be automatically be answered yes?

A. Because they proved it without a shadow of a doubt he was guilty.

Q. In other words, that question in your own mind and that's the only thing important to us now, in your own mind that question is not asking you to do anything additional to the finding you already made at the first phase of the trial?

A. I don't feel like it is, no."

With this, absent rehabilitation, Osburn proved himself challengeable for cause. See *Gardner v. State,* 730 S.W.2d 675 (Tex.Cr. App.1987); *Martinez v. State,* 763 S.W.2d 413 (Tex.Cr.App.1988).

After appellant made his challenge for cause, the prosecutor was allowed to question Osburn further, and the following colloquy ensued:

"Q. Mr. Osburn, I want to ask a couple other questions and I want to refer you back to the point in a trial of a capital murder case where the jury would be concerned with the issue of punishment.

And the Defense Counsel asked you a couple questions in which he threw in some terms and asked you if you had found, if you had facts in your mind, if you had found a defendant was guilty beyond a reasonable doubt, I believe he said would you tend to answer Question Number 1 yes, to automatically answer that Number 1 yes.

Would it be correct to say based on what you had said earlier when I was asking you some questions that you would answer that question based on the facts of a particular case?

A. I would base it on this case.

Q. Whatever case you were trying?

A. Yes.

Q. And, if the facts didn't show that a yes answer was proved to you beyond a reasonable doubt you wouldn't answer it no—you would answer it no unless it was proved yes?

A. Right.

Q. So, when you would—would it be fair to say that when you had—when [Defense Counsel] had asked you some questions about answering yes, you wouldn't answer—you wouldn't write down yes unless it was proven to you considering all of the evidence that you might hear whether it came to you in the first phase of the trial or you might hear some evidence in the second phase of a trial that might relate to that issue and you would keep an open mind and not answer it until you had heard all of the evidence; is that true?

A. Right.

Q. In a particular case, and we're not talking about this particular case, but in a case in general in the abstract, it is possible under a given set of facts for a juror to find and a whole jury to be convinced that a defendant acted intentionally and yet when they had heard all of the evidence, it might still be that they would answer that question no, if the evidence in total doesn't justify a yes answer, and if you were not convinced that a yes answer was appropriate, would you answer that first question no?

A. I would consider all of the facts before I even answered that question, regardless of where they came, whether the beginning or the middle, I wouldn't attempt to answer it until I had heard all of them and they sayd [sic] that's it, that's all of the facts, now base it on that."

Osburn's answers here amount to no more than another assurance that he would not decide the first special issue until he had heard all the evidence. As in *Sattiewhite,* that will not alter the fact that his answer to the first special issue has already "automatically" been determined by virtue of his finding that an intentional murder was committed. For this reason, in my view, Osburn was not rehabilitated.

At the time the trial court denied his challenge for cause against Osburn, appellant had exhausted all fifteen of his peremptory challenges, and had also used the one additional peremptory challenge the trial court had granted him. Appellant requested yet another additional peremptory challenge. This was denied, and consequently Osburn became the twelfth member of the jury. Needless to say, appellant had made it clear Osburn was an objectionable juror. I would therefore hold that the trial court reversibly erred to deny appellant's challenge for cause.

Because the majority does not, I respectfully dissent.