IN THE COURT OF CRIMINAL APPEALS


OF TEXAS


 




PD-1750-05









CHARLES GONZALEZ, APPELLANT



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE EIGHTH COURT OF APPEALS


EL PASO COUNTY





 Keller, P.J., delivered the opinion of the Court in which PRICE, WOMACK,
KEASLER, HERVEY, HOLCOMB and COCHRAN, JJ., joined. MEYERS, J., filed a
dissenting opinion. JOHNSON, J., concurred in the judgment of the Court.


O P I N I O N 


 The issue in this case is whether the trial court erred in denying a motion for change of venue
after there was a pretrial, public dissemination of a surveillance video of the alleged offense. We
hold that the trial court did not err.

I. BACKGROUND

A. Factual Summary

 On October 29, 2002, appellant and his juvenile companion, Adam C., entered a Good Times
Store in El Paso County. Adam carried a .22 rifle. The store was equipped with surveillance
cameras, which recorded appellant and Adam entering the store, threatening the victim with the rifle,
and demanding that he turn over "everything." After appellant took the cash, Adam shot the victim
once in the chest, killing him. In an attempt to identify and locate the suspects, local newscasts aired
the surveillance tape depicting the murder of the convenience store clerk. Numerous newspaper
articles also covered the murder and the search for the culprits. (1) Appellant was recognized and
reported to the police.

B. Trial

 Appellant was arrested for capital murder. At a pretrial hearing on a defense motion for
change of venue, appellant called two witnesses. The first, El Paso attorney Ronald Henry, testified
that he did not believe that appellant could receive a fair trial in El Paso County. He based this
conclusion upon his conversations with individual citizens, both in the courthouse and throughout
the community. Henry also testified that the media coverage in this case was abnormally heavy,
compared to a regular criminal case in the county. As examples of this, he used three newspaper
articles from the time of the offense and the television broadcasts showing the surveillance video. 
Henry remarked that he had seen the video on television twice. He agreed on cross-examination that,
in the year leading up to the venue hearing, he had not seen any media coverage mentioning
appellant, other than in passing in articles about his fellow defendant, Adam. 

 The second of appellant's witnesses was private investigator Arnold Davis. Davis testified
that he had become familiar with the case from seeing footage from the surveillance video on the
news, which he described as "play[ing] the video repeatedly." He was unable to remember
specifically how often it was played, other than saying that it was "at least every time the news was
on." Davis also talked about the positive coverage that the victim in the case received after the
murder. Finally, he testified that, through his conversations with people in the community, he
believed that appellant would not be able to receive a fair trial in El Paso County. Under cross-examination, Davis acknowledged that he did not know how many people had actually seen the
television footage or read the newspaper coverage of this particular case, nor could he make an
informed judgment as to how other El Paso residents reacted to the coverage. 

 After hearing this testimony, the court stated, "[A]lthough [appellant's witnesses] testified
that [the pretrial publicity] has touched certain people, I have no evidence before me as to what
extent it has permeated into the community." The court denied the motion, finding it premature, and
stated that appellant could reassert the motion after voir dire. At voir dire, roughly two-thirds (121
out of 180) of the jury panel members informed the trial court that they had heard of the case, and
roughly one-third (58 out of 180) of the panel members stated that they had formed an opinion about
the case that they could not set aside. After voir dire, citing the number of people who had either
heard of the case or formed an unalterable opinion about the case, appellant re-urged his motion for
a change of venue, which was again denied. Appellant was subsequently convicted and sentenced
to life in prison.

C. Appeal On appeal, appellant contested the trial court's decision to deny the motion for change of
venue. The Court of Appeals reversed, holding that pretrial publicity resulted in "actual, identifiable
prejudice" to appellant. The factors the court cited included the nature of the pretrial publicity, the
connection of government officials with the publicity, the length of time between the publicity and
the trial, the severity and notoriety of the offense, the impact of the publicity, and the candor and
veracity of prospective jurors during voir dire. (2) Noting that "pictures often speak louder than
words," the court also stated that the presence of the surveillance video moved the trial court's ruling
outside the court's discretion. (3) Based on these factors, which were derived from our opinion in
Henley v. State, the court held that the prejudice was so great that Appellant could not obtain a fair
trial in El Paso. (4)

D. Contentions of the Parties

 The State contends that the El Paso Court of Appeals failed to grant proper deference to the
trial court's decision to deny the motion to change venue. It argues that the trial court was in the best
position to evaluate the extent of prejudice to the jury during voir dire and that the evidence of
prejudice was, at best, conflicting, which placed the trial court's decision within the zone of
reasonable disagreement. Consequently, the State claims that the court of appeals incorrectly
substituted its own judgment for that of the trial court.

 Appellant responds by arguing that the trial court abused its discretion by denying the motion
to change venue. Appellant notes that he produced testimony, characterized by the trial court as
truthful, that he could not receive a fair trial in El Paso, while the State did not present any evidence
to the contrary. Appellant also argues that the trial court excused over one-third of the jury panel on
the basis of the pretrial publicity concerning the murder. He argues that the present case is
distinguishable from Neumiller v. State (5) by the fact of the video of the crime being publicized.

II. Analysis Section 31.03(a) of the Code of Criminal Procedure provides that a change of venue may be
granted if the defendant establishes that "there exists in the county where the prosecution is
commenced so great a prejudice against him that he cannot obtain a fair and impartial trial." To
justify a change of venue based upon media attention, a defendant must show that the publicity was
pervasive, prejudicial, and inflammatory. (6) Widespread publicity by itself is not considered
inherently prejudicial. (7) Indeed, even extensive knowledge of the case or defendant in the community
as a result of pretrial publicity is not sufficient if there is not also some showing of prejudicial or
inflammatory coverage. (8) The mere existence of media attention or publicity is not enough, by itself,
to merit a change of venue. (9) 

 The standard of review on appeal from a ruling on a motion for change of venue is "abuse
of discretion." If the trial court's decision concerning a motion for a change of venue falls within
the zone of reasonable disagreement, it will be upheld. (10) 

 A. Pervasiveness of the Publicity


 The two primary means of discerning whether publicity is pervasive are a hearing on the
motion to change venue and the voir dire process. The trial court in this case used both. 

 At the hearing, appellant introduced into evidence three newspaper articles, all written at the
time of the offense. Appellant also presented the opinions of two witnesses on the amount of
publicity that the case had generated, the surveillance video that was included in newscasts, and the
effect of that publicity on the community at large. However, there was no evidence of how many
times the video was shown nor of how many people actually saw the broadcast. Similarly, no
evidence was presented as to how many people saw the newspaper coverage of the case. (11) The only
evidence of how widespread the publicity's audience was, or the effect of the publicity on that
audience, came from appellant's two witnesses at the venue hearing, as laid out above, which the
trial court had discretion to consider or discount as it saw fit.

 In regard to the voir dire process, appellant argues that the number of jurors that were unable
to serve on a jury in this case demonstrates the extent to which pretrial publicity had permeated the
community. Here, out of 180 members on the panel, 121 were familiar with the case, and 58 had
formed an opinion that they would not be able to set aside. By appellant's reasoning, the fact that
approximately two-thirds of the panel had heard about the case, and that approximately one-third of
the panel had an opinion that could not be set aside, is reason enough to consider the entire
community "infected" by the pretrial publicity. But this conclusion does not comport with existing
caselaw. In the past, this Court and other appellate courts have found trial courts within their
discretion when they seated panels where 69 veniremembers out of 109 had seen publicity on the
accused's case, (12) where 44 out of 72 had seen publicity on the defendant's case, (13) and where 52
panelists out of 64 had seen something on the defendant's case. (14) Likewise, we have found trial
courts within their discretion when they seated juries where 15 veniremembers out of 77 stated that
they had an opinion that could not be set aside, (15) and where 39 out of 112 held that same view. (16) 

 The trial court in this case heard responses from numerous jurors, both as to whether they had
heard of the case and as to whether they would be able to be fair and impartial. The trial court was 
within its discretion to believe the jurors' assurances that 1) they had not seen any publicity on the
case, or 2) that the publicity had not influenced them to the point that they could not deliver a fair
verdict. The fact that there were a number of panelists that had heard of the case, or that could not
set aside their opinions on the case, does not establish that the pretrial publicity permeated the
community to such an extent that the decision to deny the motion for a change of venue was outside
the zone of reasonable disagreement. While the lack of pervasiveness alone would be enough to
sustain the trial court's ruling, we will also examine the question of whether the publicity was
inflammatory and prejudicial.B. Prejudicial and Inflammatory Character of the Publicity

 In examining whether the pretrial publicity is prejudicial and inflammatory, a trial court may
take three matters into consideration: 1) the nature of the publicity, 2) any evidence presented at a
change of venue hearing, and 3) testimony received from veniremembers at voir dire. (17) News stories,
be it from print, radio, or television, that are accurate and objective in their coverage, are generally
considered by this Court not to be prejudicial or inflammatory. (18) Appellant points to the publication
of the surveillance video as a distinguishing feature of this case. He describes the video as
"gruesome and disturbing,"and "the most prejudicial piece of evidence" presented by the State in
its prosecution. Appellant argues, in light of the testimony presented at the hearing and the answers
given by the jury panel at voir dire, that the inclusion of the surveillance video, along with the other
coverage of the crime, makes the pretrial publicity inflammatory and prejudicial. 

 Over the last forty years, this Court has been reluctant to hold that pretrial publicity in a case
was so prejudicial and inflammatory that the trial court's decision to deny a change of venue was
outside the zone of reasonable disagreement. (19) Although we have taken up the issue numerous
times in recent years, in only two cases have we found that a trial court abused its discretion in
connection with denying a motion to change venue: Henley and Rubenstein. (20) Because Henley
involved the court's failure to hold a hearing or allow the introduction of evidence on pretrial
publicity, it is not instructive as to the issue in this case. (21) Rubenstein is more applicable. Jack
Rubenstein, also known as Jack Ruby, was arrested and indicted for the murder of Lee Harvey
Oswald. Rubenstein shot and killed Oswald as he was being moved from the Dallas city jail to the
county jail. (22) The jail transfer was being covered by both national and local press. (23) In the local
coverage, news stories stated "directly, indirectly, by hints and innuendoes that a Communist
conspiracy existed between Oswald and Ruby." (24) Rubenstein was referred to as a "tough guy" or
"Chicago mobster" in the press, and Rubenstein's shooting of Oswald was seen on television by
"countless thousands" of Dallas County residents. (25) Rubenstein filed a pretrial motion for change
of venue, which was denied. His conviction was overturned on appeal on other grounds, but this
Court also held that the trial court erred in denying the change of venue. (26) In a concurring opinion,
Judge McDonald described the publicity surrounding Rubenstein's case as "a background of unusual
and extraordinary invasions of the expected neutral mental processes of a citizenry," which
contributed to the Court's reasoning that the trial court abused its discretion in denying a change of
venue. (27) 

 We find the present case to be distinguishable from Rubenstein. The coverage by the local
media in this case was accurate and objective. Although a large number of panelists were
disqualified for cause because they were unable to set aside their opinion of appellant's guilt, those
circumstances do not require a conclusion that the publicity was inflammatory or prejudicial. (28) 
Moreover, the surveillance video that appellant labels as prejudicial and inflammatory was evidence
of the crime that in fact was later admitted in its entirety at trial. Because the jurors were going to
be exposed to this evidence anyway, we cannot hold that the publication of a surveillance video,
absent other facts, was by itself prejudicial and inflammatory. (29)

 The trial court received the documentary evidence and heard the testimony of the witnesses
during the pretrial hearing, and it heard the responses of the jurors at voir dire. This court affords
great deference to trial courts because a trial court is in a better position to resolve issues involving
testimony and other questions of fact as a result of its ability to observe the demeanor of witnesses
and scrutinize their veracity face to face. (30) We see nothing in this record other than the video to
distinguish this case from numerous others in which we have upheld a trial court's denial of a motion
to change venue. That sole distinguishing characteristic is not sufficient to place beyond the zone
of reasonable disagreement the trial court's decision to deny appellant's motion.

 The judgment of the court of appeals is reversed, and the case is remanded to the court of
appeals to address appellant's remaining points of error.

Date delivered: May 9, 2007

Publish



 
1. Appellant introduced three newspaper articles into evidence at the hearing on the
motion to change venue. See Gonzales v. State, 2005 Tex.App. LEXIS 7146, at *10-12 (Tex.
App. - El Paso 2006).
2. Gonzales, 2005 Tex.App.LEXIS 7146, at *10.
3. Id. at *14.
4. Id. at *17-18, citing Henley v. State, 576 S.W.2d 66 (Tex.Crim.App. 1978).
5. Neumiller v. State, 953 S.W.2d 502 (Tex. App.-El Paso, 1997, pet. ref'd).
6. Salazar v. State, 38 S.W.3d 141, 150 (Tex. Crim. App. 2001). 
7. See Renteria v. State, 2006 Tex.Crim.App.LEXIS 1919, *48-49 (Tex.Crim.App. 2006);
Dewberry, 4 S.W.3d at 745 n.5; Bell v. State, 938 S.W.2d 35, 46 (Tex.Crim.App. 1996).
8. Faulder v. State, 745 S.W.2d 327, 338-339 (Tex.Crim.App. 1987).
9. See Bell, 938 S.W.2d at 46; Willingham v. State, 897 S.W.2d. 351, 357 (Tex.Crim.App.
1995); Teague v. State, 864 S.W.2d 505, 509 (Tex.Crim.App. 1993).
10. See Narvaiz v. State, 840 S.W.2d 415, 428 (Tex.Crim.App. 1996); Penry v. State, 903
S.W.2d 715, 727 (Tex.Crim.App. 1995); Ransom v. State, 920 S.W.2d 288, 299 (Tex.Crim.App.
1994).
11. For examples of what form such evidence could take, see Mayola v. Alabama, 623
F.2d 992, 998 (5th Cir. 1980); United States v. Ricardo, 619 F.2d 1124, 1131-1132 (5th Cir.
1980).
12. Von Byrd v. State, 569 S.W.2d 883, 890-891 (Tex.Crim.App. 1978)
13. Russell v. State, 146 S.W.3d 705, 714 (Tex.App.-Texarkana 2004, pet. ref'd)
14. Crawford v. State, 685 S.W.2d 343, 349-350 (Tex.App.-Amarillo 1984), rev'd on
other grounds, 696 S.W.2d 903 (Tex.Crim.App. 1985).
15. Gardner v. State, 733 S.W.2d 195, 204-205 (Tex.Crim.App. 1987)
16. Taylor v. State, 420 S.W.2d 601, 604 (Tex.Crim.App. 1967)
17. Bell, 938 S.W.2d at 46.
18. See Bell, 938 S.W.2d at 46; Willingham, 897 S.W.2d at 357; Johnson v. State, 773
S.W.2d 322, 324-325 (Tex.Crim.App. 1989); Beets, 767 S.W.2d at 743. See also Patton v.
Yount, 467 U.S. 1025, 1033-1034 (1984).
19. See, e.g., Bell, 938 S.W.2d 35; Penry, 903 S.W.2d 715; Teague, 864 S.W.2d 505;
Narvaiz, 840 S.W.2d 415; Henley, 576 S.W.2d 66; Von Byrd, 569 S.W.2d 883; Garcia v. State,
513 S.W.2d 82 (Tex.Crim.App. 1974); Rubenstein v. State, 407 S.W.2d 793 (Tex.Crim.App.
1966).
20. See Henley, 576 S.W.2d 66; Rubenstein, 407 S.W.2d 793.
21. Henley, 576 S.W.2d at 72. Henley recited, but did not actually apply, the factors in
determining whether a change of venue was warranted.
22. Rubenstein, 407 S.W.2d at 794.
23. Id.
24. Id. at 796 (McDonald, J. concurring).
25. Id. at 796 (McDonald, J. concurring).
26. Id. at 795.
27. Id. at 796 (McDonald, J. concurring).
28. See Gardner, 733 S.W.2d at 204-205; Taylor, 420 S.W.2d at 604.
29. Because the video was introduced into evidence at trial, it could be said that appellant
benefitted from the pretrial publicity: he found out ahead of time which people would decide his
guilt solely on the basis of the video, and he was allowed to remove them from his jury. In ruling
on a motion to change venue, a trial court could reasonably consider the distinction between
pretrial dissemination of inadmissible evidence and pretrial dissemination of evidence that the
jury will ultimately hear.
30. Hathorn v. State, 848 S.W.2d 101, 109 (Tex.Crim.App. 1992).